SAMUEL L. LAWSON v. LOUISE BENNETT, GUARDIAN AD LITEM FOR PEARL T. LAWSON.

(Filed 7 April, 1954.)

**1. Divorce and Alimony § 2a—**

Divorce on the grounds of two years' separation under G.S. 50-6 cannot be maintained when the separation is due to the insanity or mental incapacity of defendant spouse, the sole remedy in such instance being under G.S. 50-5 (6).

**2. Administrative Law § 4—**

Where a statute provides a valid remedy, such remedy is exclusive.

**3. Divorce and Alimony § 5e—**

While ordinarily a defendant wife may not attack a deed of separation by cross-action in her husband's suit for divorce, where the husband, in reply to the wife's cross-action for subsistence pending the trial and subsequent thereto, sets up a deed of separation as a bar to the cross-action, the court may allow defendant to amend so as to allege that the deed of separation was invalid because of her mental incapacity.

**4. Husband and Wife § 12d (3): Insane Persons § 12—Mental incapacity renders contract voidable but not void.**

The mere fact that at the time of the execution of the deed of separation the wife was mentally incompetent does not support a judgment declaring that the deed of separation is void, since in such circumstances the contract is voidable and should not be annulled unless the husband is unable to show that he was ignorant of the wife's incapacity and had no notice thereof sufficient to put a reasonably prudent person upon inquiry, paid a fair and full consideration, took no unfair advantage of the wife, and that the wife has not restored or is unable to restore the consideration or make adequate compensation therefor.

APPEAL by plaintiff from *Gwyn, J.,* at October Term, 1953, of ROCK-INGHAM.

Civil action for absolute divorce of bonds of matrimony existing between plaintiff and defendant on the ground of two years separation.

The record discloses these facts:

1. Plaintiff in his complaint filed 23 October, 1952, alleges, briefly stated: (1) That he is and has been a resident of Rockingham County in North Carolina for more than six months next preceding the commencement of this action; (2) that he and defendant were lawfully married to each other on 23 December, 1919, and to them four children were born, all of whom are more than 21 years of age; (3) that they separated from each other on 20 October, 1950, and have lived separate and apart continuously since that date,—the separation being for more than two years next preceding the commencement of this action, and (4) that defendant is not in the military service of the United States Government. Upon these allegations plaintiff prays that he be granted an absolute divorce from defendant.

2. On 5 November, 1952, it being made to appear to the court by verified petition and motion of Louise Bennett, a daughter of defendant, that defendant Pearl T. Lawson was then mentally incompetent and had no general or testamentary guardian within this State, the Clerk of Superior Court thereupon finding Louise Bennett to be a fit person therefor, appointed her guardian *ad litem* for defendant.

3. Thereafter on 7 November, 1952, defendant, through her guardian *ad litem,* filed answer to the complaint. And in answer filed the allegations of the complaint were admitted, except those pertaining to separation of plaintiff and defendant, and those were denied.

Defendant, through her guardian *ad litem,* for further answer, and by way of cross-action for alimony *pendente lite* and counsel fees, also averred, among other things not now pertinent, that she was a good and dutiful wife to plaintiff at all times, and provided a home for him until on or about 20 October, 1950, when she was forced out of the home occupied by them, and, due to his treatment of her, she had become mentally incompetent, and did not know the nature and consequences of her acts, and was induced to sign a deed of separation between her and plaintiff which was not fair or reasonable to her; and that she continues mentally ill. And she prays judgment (1) dismissing "complaint of plaintiff," (2) awarding to her subsistence pending the trial and subsequent thereto, and (3) awarding counsel fees.

Thereafter, on 20 November, 1952, plaintiff, replying to defendant's further answer and cross-action, as above set forth, in pertinent part, admits that he and defendant were married and lived together until sometime prior to 20 October, 1950, on which date he and she entered into a final agreement or deed of separation, which he pleads as a full and complete bar to defendant's right to recover on her cross-action. He

also alleges "that defendant is now and has always been of sound mind"; that at the time of the execution of the said deed of separation defendant was of sound mind and understood thoroughly all matters in connection with said settlement, and accepted the same, and the terms of it,—and has not raised any question about the settlement until this action was instituted. Thereupon plaintiff prays that relief asked by defendant be denied, and that he have the relief originally sought.

Thereafter on 27 October, 1953, upon the entering of the case for trial, and immediately preceding the selection of jury, defendant, over objection and exception by plaintiff, was allowed to amend her answer by adding a paragraph reading as follows: "That at the time the deed of separation was executed by Pearl T. Lawson on the 20th day of October, 1950, the said Pearl T. Lawson was mentally ill and was mentally incompetent to understand the consequences of her act and that because of her mental illness her act of executing said deed of separation was null and void and is voidable and should be set aside by the court because of her mental incompetency." Thereupon, "defendant, as an additional prayer for relief, prays that said deed of separation be declared null and void and be set aside by the court."

Plaintiff on same day, without waiving or relinquishing any of his rights under this objection and exception to the order allowing the above amendment, filed reply, denying the averments of the above amendment, and saying that he "reiterates and repeats and relies upon all the facts, circumstances and conditions, before, and at the time of the execution and acknowledgement of said deed of separation," etc., "as fully set forth at length under plaintiff's reply filed . . . 7 November, 1952, in bar of defendant's rights in the premises and in complete bar of defendant's right to set up and seek to declare and have said deed of separation declared null and void by the court and to have same set aside . . .," etc.

Upon the trial in the Superior Court, as disclosed by the case on appeal, it was not controverted: (1) that plaintiff and defendant were married to each other on 19 December, 1919; (2) that they lived together as husband and wife until 20 October, 1950, when a separation took place, and a deed of separation was signed by them; (3) that thereafter they have lived separate and apart from each other; (4) that both have resided in North Carolina more than six months next prior to the institution of this action and the filing of complaint herein; and (5) that the action was begun on 23 October, 1952, more than two years after the separation.

The case on appeal also discloses that plaintiff offered in evidence separation agreement entered into 20 October, 1950, between plaintiff and defendant, acknowledged and registered, and that the trial judge gave peremptory instructions to the jury in respect to each of the first three

issues hereinafter shown, and the record shows that in accordance therewith those issues were answered in the affirmative.

And the case on appeal further reveals that the battle before the jury was waged around the issue as to whether or not at the time of the separation and the signing of the deed of separation, the defendant had sufficient mental capacity to understand what she was engaged in doing, and the nature and consequences of her act. The trial judge put the burden of this issue upon defendant, and so instructed the jury.

All the evidence tends to show that plaintiff and defendant enjoyed a happy home,—rearing four children to maturity, in wholesome Christian atmosphere, until defendant became emotional, nervous and violent sometime prior to the year 1947.

Plaintiff testified in his own behalf, and offered testimony of many others. And, under cross-examination, plaintiff said: That he had defendant examined by a local doctor, and by another at Winston-Salem, on whose recommendation he took her to St. Albans Sanitarium at Radford, Virginia, where she was treated for two months; that when she came home she appeared to be physically and mentally all right, but that same things again arose; that at one time she left home and stayed away for two weeks, and when she came back she became violent and threatened him; that negotiations for separation agreement followed—culminating in a deed of separation being signed by them on 20 October, 1950; and that he has not been back since. Plaintiff also offered testimony bearing upon his contention that defendant was mentally sound.

On the other hand, testimony offered in behalf of defendant tends to show: That defendant had become unmanageable when on 16 April, 1948, she was taken by plaintiff to the St. Albans Sanitarium; that Dr. Morrow, of the medical staff there, told plaintiff what defendant's mental condition was,—he called it "maniac-depressive psychosis," for which she was given electric shock treatment, and was discharged from the Sanitarium on 21 June, 1948; that later she became deeply depressed,—requiring someone to stay with her, but she would not let her own children stay; that her condition became such that two of her children took her back to St. Albans on 1 January, 1951, and she was kept there three months,— receiving electric treatment while there; that she was then taken by her daughter to Greensboro, where she was under the care of a doctor, who also gave her electric shock treatment; that on 4 June, 1953, the doctor sent her to Camp Butner, at first as a voluntary patient, and on 30 July, 1953, she was changed to legal commitment under Chapter 122 of General Statutes, and that she is still at Butner.

Deposition of Dr. James K. Morrow was offered by defendant. He testified that as a member of the medical staff of St. Albans Sanitarium at Radford, Virginia, he had occasion to examine Mrs. Lawson, the de-

fendant, on 16 April, 1948, at the sanitarium where she was treated from that date to 21 June, 1948; that the diagnosis in her case was maniac-depressive psychosis,—the illness was mental; that at time of her discharge on 21 June, 1948, her condition was considerably improved but the probability of future attacks is rather great in this disorder; that he did not believe that she was at that time in a completely recovered condition; that later, 1 January, 1951, she was seen by him as a patient in a relapse of her previous condition; and at that time on her readmission she was in a state of excitement again, but much worse than before; that at this time electric shock was the principal treatment used; that such treatment is considered drastic and is used only in the treatment of severe mental disorders; that "manic-depressive psychosis is a type of mental disorder . . . characterized by periods of excitement or periods of depression with recurrent episodes throughout life and very often with periods of normality between times"; that it does not affect the individual's intelligence at all, but does affect the emotions to such an extent that a person might be either wildly excited or deeply depressed; and that the judgment of a person with this disorder is badly affected. And the doctor, in résumé, said: "I would not have a positive opinion as to whether her illness is incurable or whether she will eventually recover because of the nature of her illness; I would think that the prospect for a cure is not very good in her particular case because the history seems to indicate that she had never reached a normal level between attacks."

And Dr. Jas. Wilson Murdock, a medical practitioner trained in psychiatry, admitted to be an expert as such, as witness for defendant, testified: That on 4 June, 1953, Mrs. Lawson was admitted as a patient at Butner; that at that time she was "in a very excited condition,—a condition we know as mania"; that "she was very irritable, showed a lot of hostility, very noisy"; that her condition was known as maniacal-depressive psychosis; that on this particular occasion she suffered from mania; that the symptoms of this mental illness is a feeling of elation, great excitement, constant movement, very often associated with irritability, inability to sleep, and during the acute stages of the attack, because of the elation, judgment is very severely impaired; that if a person is suffering from that mental illness in the acute stage the judgment would be very defective because of the accompanying emotional condition; that they are very liable to make mistakes in judgment in anything, any business matter, any matter affecting the general life. And the doctor stated that he doesn't think Mrs. Lawson when suffering from one of these acute stages, would have sufficient mental capacity and understanding to understand the consequences of her act, that is when she is suffering from mania; and that she has been maniac and excited the whole time she's been in Butner.

---

---

And there was testimony that just prior to and at the deed of separation the defendant, Mrs. Lawson, did not have sufficient mental capacity to understand what she was doing and to understand the nature and consequences of her act.

These issues were submitted to, and answered by the jury as indicated:

"1. Were the plaintiff and defendant married to each other, as alleged in the complaint? Answer: Yes.

"2. Has the plaintiff been a resident of the State of North Carolina for six months next prior to the institution of this action and the filing of the complaint herein, as alleged in the complaint? Answer: Yes.

"3. Did the plaintiff and the defendant separate from each other and have they lived separate and apart from each other continuously for two years next prior to the institution of this action and the filing of the complaint herein? Answer: Yes.

"4. At the time of the separation and the signing of the deed of separation, did the defendant have sufficient mental capacity to understand what she was engaged in doing and the nature and consequences of her act? Answer: No."

Plaintiff tendered the first three issues, and excepted to the submission of the fourth. Exception No. 2. Plaintiff moved to set aside the verdict as to the fourth issue. Motion was denied. Exception No. 3. Plaintiff also tendered judgment for absolute divorce on the verdict as to the first three issues. To the refusal of the court to sign same, plaintiff excepted. Exception No. 6.

On the verdict rendered, the trial court entered judgment:

"1. That the plaintiff's action for divorce be dismissed.

"2. That the deed of separation between the parties referred to in the pleadings be, and the same is hereby declared null and void, and it is ordered that the same be set aside.

"3. That the cost of this action be taxed by the Clerk and paid by the plaintiff."

Plaintiff excepted to the signing of the judgment, and to the judgment itself (Exception No. 5), and appeals to Supreme Court, and assigns error.

*Wm. Reid Dalton and A. D. Folger, Jr., for plaintiff, appellant.*
*Brown, Scurry & McMichael for defendant, appellee.*

WINBORNE, J. The foremost question here is this: Where a spouse, the wife in the instant case, has suffered impairment of mind to such an extent that she does not have sufficient mental capacity to understand what she is engaged in doing, and the nature and consequences of her act, may the other spouse, the husband here, maintain an action against her

for divorce on the ground of two years' separation, that is, under the provisions of G.S. 50-6? The trial judge held that he did not have such right, and, upon careful consideration of the question, this Court affirms.

In this connection, the General Assembly has seen fit to legislate specifically and specially in respect to the granting of absolute divorce in all cases where a husband and wife have lived separate and apart by reason of the incurable insanity of one of them, upon the petition of the same spouse. G.S. 50-5, subsection 6, as amended.

Therefore, in keeping with well established principle the remedy provided is exclusive. In *Bar Asso. v. Strickland,* 200 N.C. 630, 158 S.E. 110, in opinion by *Brogden, J.,* this Court said: "The courts everywhere are in accord upon the proposition that if a valid statutory method of determining a disputed question has been established, such remedy so provided is exclusive and must be first resorted to and in the manner specified therein." This principle has been quoted and applied in many decisions of this Court, among which are these: *Maxwell, Comr., v. Hinsdale,* 207 N.C. 37, 175 S.E. 847; *Rigsbee v. Brogden,* 209 N.C. 510, 184 S.E. 24; *Wilkinson v. Boomer,* 217 N.C. 217, 7 S.E. 2d 491; *Riddick v. Davis,* 220 N.C. 120, 16 S.E. 2d 662; *Worley v. Pipes,* 229 N.C. 465, 50 S.E. 2d 504.

Hence, the jury having answered the fourth issue in the negative, and the provisions of G.S. 50-5 (6) not having been invoked, the trial court properly held that plaintiff cannot maintain an action upon the grounds alleged in his complaint.

Appellant, the plaintiff, also excepts to and assigns as error the ruling of the trial court in permitting defendant to amend her further answer to plead affirmatively the invalidity of the separation agreement of 20 October, 1950, by reason of her mental incompetency, as hereinabove set forth.

As to this, ordinarily, such plea is not permitted in an action for absolute divorce on the ground of two years' separation. *Jenkins v. Jenkins,* 225 N.C. 681, 36 S.E. 2d 233. But here the pleadings present a different, and particular situation created by plaintiff.

Defendant, answering the complaint in respect to the alleged separation, sets up as a defense that she was mentally incompetent. Thereupon plaintiff, in reply thereto, alleges that the deed of separation of 20 October, 1950, was a full and complete settlement between plaintiff and defendant, and sets up the deed of separation "as a full and complete bar to the defendant's right to recover on her cross-action in this cause." And it was in answer thereto that defendant, by permission of the court, was permitted to amend her answer. Under these circumstances the fourth issue was proper, and plaintiff having initiated it, may not now complain.

However, the assignment of error based upon exception to the judgment is well taken. *Carawan v. Clark,* 219 N.C. 214, 13 S.E. 2d 237. The principle applied to the factual situation there is applicable to case in hand. Defendant here occupies the position of plaintiff there. And the Court in opinion by *Barnhill, J.,* now *C. J.,* had this to say:

"A contract entered into by a person who is mentally incompetent is voidable and not void. . . . At the election of the incompetent and upon the return of the consideration and the restoration of the *status quo,* it will be annulled by a court of equity.

"Under certain conditions such a contract may be avoided by the incompetent even when he is unable to place the other party to the contract *in statu quo,* but the greater weight of authority supports the rule that where a contract with an insane person has been entered into in good faith, without fraud or imposition, for a fair consideration, of which the incompetent has received the benefit, without notice of the infirmity, and before an adjudication of insanity, and has been executed in whole or in part, it will not be set aside unless the parties can be restored to their original position. . . .

"Thus, in an action to rescind a contract, as here, for that the plaintiff was, at the time, mentally incompetent, the plaintiff must show insanity or mental incompetency at the time the contract was entered into. Upon such showing the contract will be annulled unless it is made to appear—the burden being on the defendant—that the defendant (1) was ignorant of the mental incapacity; (2) had no notice thereof such as would put a reasonably prudent person upon inquiry; (3) paid a fair and full consideration; (4) took no unfair advantage of plaintiff; and (5) that the plaintiff has not restored and is not able to restore the consideration or to make adequate compensation therefor."

Applying these principles to case in hand: The verdict of the jury on the fourth issue establishes the mental incompetency of defendant at the time the deed of separation of 20 October, 1950, was entered into. Upon such showing the deed of separation will be annulled unless plaintiff is able to carry the burden imposed upon him as indicated in the *Carawan case, supra.*

However, in the event it becomes necessary for the court to make an allowance for subsistence, the court should take into consideration the property received by defendant under the deed of separation and now in her possession and unused for her past subsistence.

Therefore, for these reasons, even though plaintiff, on the verdict rendered, is not entitled to a decree of divorce, the action will not be dismissed, but will be retained for further proceedings as to right and justice appertains and the law provides.

Error and remanded.