WILLIAM C. SCOTT, SR., PLAINTIFF v. JANE MAYO SCOTT, DEFENDANT

No. 9115DC258

(Filed 7 July 1992)

### 1. Divorce and Separation § 68 (NCI4th) — divorce — incurable insanity — finding that mentally ill defendant not insane — no error

The trial court did not err in a divorce action by finding and concluding that defendant was not incurably insane where plaintiff had filed for a divorce based on one year's separation; defendant asserted incurable insanity as an affirmative defense; the evidence clearly demonstrated defendant's incurable mental illness; and the evidence before the court in its totality showed that defendant, although mentally ill, usually understands what she is engaged in doing and the nature and consequences of her acts.

**Am Jur 2d, Divorce and Separation § 88.**

**Insanity as substantive ground for divorce or separation. 24 ALR2d 873.**

### 2. Evidence and Witnesses § 2630 (NCI4th) — divorce — insanity of spouse — opinion of attorneys — admissible

There was no prejudicial error in a divorce action in which defendant claimed to be incurably insane where the court admitted testimony from two attorneys who had represented defendant in matters other than the divorce. It is the substance of the attorney-client communication that is protected and not the fact that there have been communications or the attorney's observations of the client's physical characteristics such as demeanor, bearing, sobriety or dress. The attorneys here also testified to the substance of several communications made by defendant to them in the course of their legal representation of her; nevertheless, given the evidence properly admitted on the issue of defendant's mental state, the error was not prejudicial.

**Am Jur 2d, Witnesses § 402.**

SCOTT v. SCOTT

[106 N.C. App. 606 (1992)]

APPEAL by defendant from judgment entered 16 October 1990 by *Judge James Kent Washburn* in ALAMANCE County District Court. Heard in the Court of Appeals 6 January 1992.

Plaintiff-husband and defendant-wife were married in 1956. Four children were born of the marriage and all have reached their majority. The parties separated on 17 December 1988 and on 10 April 1990, plaintiff filed for absolute divorce, based on a year's separation pursuant to N.C. Gen. Stat. § 50-6, and for equitable distribution of the marital property. Defendant answered and counterclaimed for temporary and permanent alimony, counsel fees and equitable distribution. On 11 July 1990, defendant filed an amended answer alleging that she suffered from an incurable mental illness. She moved to dismiss the divorce complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure and asserted N.C. Gen. Stat. § 50-5.1 as an affirmative defense. On 6 August 1990, plaintiff filed a reply admitting that defendant has suffered from mental illness, including bipolar disorder and alcoholism, and that these illnesses were the reason for the separation of the parties.

At trial, the testimony tended to show that the parties had been married for thirty-two years and that defendant had been treated continuously for mental illness since 1968. Her diagnoses at various times included paranoid schizophrenia, manic depressive (or bipolar) disorder and schizo-affective disorder. During the twenty-three years preceding plaintiff's filing, defendant was admitted to hospitals at least eighteen times for treatment of her mental illness. The periods of hospitalization lasted from two to ten weeks. Her mental illness was accompanied and complicated by alcohol abuse. All of her hospitalizations were voluntary, but several times she went only because her doctor told her that if she didn't, he would commit her himself. She was never involuntarily committed, diagnosed as "insane" or adjudicated incompetent.

Plaintiff-husband testified that during their marriage defendant kept the house clean, paid the house bills, arranged for painters and plumbers to maintain the house, raised the four children and entertained friends at home. He testified that she bought her own clothes and kept herself well-dressed and clean. When she was not in the hospital, she had her ups and downs, but she was usually able to manage the household on a normal basis. Whenever she failed to take her medicine or drank alcohol, it would lead to trou-

ble. On cross, plaintiff also admitted that defendant suffered from tremendous mood swings wherein she would go from being euphoric to being severely depressed and that plaintiff never knew what to expect when he got home from work, that she had become depressed to the point of threatening or actually attempting suicide, that she was a spendthrift and often went on spending sprees when the parties could least afford it, and that in periods of rage she had destroyed or damaged personal property within the home and had physically abused and assaulted the plaintiff during these moments of rage.

Two attorneys testified on order of the court as to interviews they conducted with defendant concerning other legal matters and their observations of defendant's conduct and demeanor.

Two psychiatrists testified for defendant. A third psychiatrist testified by affidavit. The psychiatric testimony was to the effect that defendant suffers from an incurable mental illness consisting of three components: a schizophrenic or delusional component that is a thought disorder, a manic component that is a judgment disorder, and a depressive component that is a mood disorder. These disorders can be treated with medication but defendant will never be cured. Defendant's mental condition is very labile and she needs continuous psychiatric supervision to adjust her medications. One psychiatrist described defendant's life as "tormented," another described her as being "very ill." Defendant did not testify.

On 5 September 1990, the trial court entered an order denying defendant's motion to dismiss and entered judgment granting plaintiff an absolute divorce based on one year's separation. The trial judge made the following pertinent finding of fact and conclusion of law in the dismissal order:

### FINDINGS OF FACT

3. Over the last twenty-two years, the defendant has been voluntarily hospitalized for short periods of time on numerous occasions at Alamance Memorial Hospital and North Carolina Memorial Hospital for treatment of mental illness. The defendant has continually suffered from incurable mental illness but a majority of the time, her mental illness has been controllable with medication and the defendant has been able to function in normal daily situations such as maintaining a household, paying bills and handling financial matters, hosting social func-

tions, shopping, maintaining her driver's license and operating a motor vehicle. The defendant has never been involuntarily committed nor adjudicated incompetent or incurably insane.

## CONCLUSIONS OF LAW

(2) The defendant has failed to prove by the greater weight of the evidence that she is incurably insane within the meaning and purpose of North Carolina G.S. 50-5.1.

*Wyatt Early Harris Wheeler & Hauser, by A. Doyle Early, Jr., for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by Susan D. Crooks, Carole S. Gailor and Susan S. McFarlane, for defendant-appellant.*

JOHNSON, Judge.

[1] Defendant first contends that the trial court erred in granting plaintiff a divorce based on a year's separation. N.C. Gen. Stat. § 50-6. Defendant argues that she suffers from an incurable mental illness and therefore the exclusive means by which plaintiff can obtain a divorce is pursuant to N.C. Gen. Stat. § 50-5.1, which requires a three year separation. Plaintiff contends that N.C. Gen. Stat. § 50-5.1 does not apply because defendant, even though mentally ill, is not "incurably insane" as required by statute. The issue is whether the trial judge erred in concluding that defendant is not "incurably insane" as contemplated by N.C. Gen. Stat. § 50-5.1. We find that under the facts of this case the trial court did not err.

Two statutes govern divorce in this state. North Carolina General Statutes § 50-6 (1987) allows the granting of an absolute divorce after a one year separation. North Carolina General Statutes § 50-5.1 (1987) [formerly N.C. Gen. Stat. § 50-5(6)] governs absolute divorce in situations where one spouse is incurably insane. This statute is the exclusive remedy where the parties have separated by reason of the incurable insanity of the defendant. *Lawson v. Bennett*, 240 N.C. 52, 58, 81 S.E.2d 162, 167 (1954); *Moody v. Moody*, 253 N.C. 752, 756, 117 S.E.2d 724, 726 (1961). Section 50-5.1 states in pertinent part:

In all cases where a husband and wife have lived separate and apart for three consecutive years, without cohabitation, and are still so living separate and apart by reason of the incurable insanity of one of them, the court may grant a decree

of absolute divorce upon the petition of the sane spouse:
. . . Provided further, the evidence shall show that the insane
spouse is suffering from incurable insanity, and has been con-
fined or examined for three consecutive years next preceding
the bringing of the action in an institution for the care and
treatment of the mentally disordered or, if not so confined,
has been examined at least three years preceding the institu-
tion of the action for divorce and then found to be incurably
insane as hereinafter provided.

The statute then goes on to specify the methods by which the
spouse's insanity may be proved and specifically states which treating
professionals can provide such proof. It also provides that when
the insane defendant has insufficient income to provide for his
or her own care and maintenance, the court shall require the plain-
tiff to provide for care and maintenance for the defendant's lifetime.
The statute does not define the term "incurable insanity."

In *Lawson*, 240 N.C. 52, 81 S.E.2d 162, plaintiff-husband filed
for divorce pursuant to N.C. Gen. Stat. § 50-6, alleging a two [now
one] year separation. Defendant alleged by way of defense that
she was mentally incompetent at the time of the separation and
at the time that she signed a deed of separation. The Supreme
Court stated the issue to be whether a spouse can maintain an
action for divorce under N.C. Gen. Stat. § 50-6 when the other
spouse, here the wife, "has suffered impairment of mind to such
an extent that she does not have sufficient mental capacity to
understand what she is engaged in doing, and the nature and conse-
quences of her act." *Id.* at 57, 81 S.E.2d at 166. In *Lawson*, the
jury found that the wife did not have this requisite mental capacity.
The Court held that this finding prevented the granting of a divorce
under N.C. Gen. Stat. § 50-6 and that N.C. Gen. Stat. § 50-5(6)
[now N.C. Gen. Stat. § 50-5.1] was the exclusive remedy. *See also*
*Moody*, 253 N.C. 752, 756, 117 S.E.2d 724, 727 (where the Court
said in *dictum*: "[T]o bar an action for divorce based on two [now
one] years separation, the mental impairment must be to such ex-
tent that defendant does not understand what he or she is engaged
in doing, and the nature and consequences of the act," citing *Lawson*,
240 N.C. 52, 81 S.E.2d 162).

The question in the case *sub judice* is whether the defendant
presented sufficient evidence to support her contention that she
is "incurably insane," that is, that she is so mentally impaired

that she does not understand what she is engaged in doing and the nature and consequences of her acts. We find that the evidence clearly demonstrates defendant's mental illness and that her illness is incurable. Her illness, however, does not rise to the level of "insanity." It is uncontested that defendant has never been involuntarily admitted to a mental hospital and has never been adjudicated incompetent or insane. The testimony from her psychiatrists and husband was to the effect that when she is on medication she can function fairly normally but that she requires periodic hospitalization to adjust her medications. The two attorneys testified that in their dealings with defendant she responded appropriately to their questions and appeared to understand the subject matter of their conversations and what she was signing. The evidence before the court in its totality shows that defendant, although mentally ill, usually understands what she is engaged in doing and the nature and consequences of her acts. We find that the findings of fact are supported by the evidence and the conclusion of law is supported by the findings. This assignment of error is overruled.

[2] Defendant next contends that the trial judge erred in ordering two attorneys to testify over defendant's objection that their testimony violated the attorney-client privilege. Defendant contends that she was prejudiced by this error because the trial judge apparently based a portion of his findings of fact on the testimony.

The two attorneys did not represent defendant at the divorce hearing. Attorney Burgin represented defendant's interests in a business transaction and met with her once at the hospital for the purpose of having her sign some documents concerning the refinancing of plaintiff's business. He testified, under order of the trial court, as to his conversation with defendant and to his conclusion that she seemed to understand that the documents she was signing were a deed of trust and an indemnification agreement and that the purpose of his representation was to see that she was protected. Attorney Messick was appointed by the clerk of court to be defendant's guardian ad litem following the filing by defendant's son of an incompetency petition pursuant to Chapter 35A. This petition was later voluntarily dismissed prior to any hearing being held. Attorney Messick testified, under order of the court, that he had several telephone conversations and two meetings with defendant, one at defendant's home and one in his office. Attorney Messick testified as to his observations of the defendant,

SCOTT v. SCOTT

[106 N.C. App. 606 (1992)]

her person and her home, and his discussion with her as to her need for a guardian, her medical history, her medications, about what a competency hearing entailed and about who would be a suitable general guardian should she be found to be incompetent. Defendant objected to the testimony of both attorneys.

> It is an established rule of the common law that confidential communications made to an attorney in his professional capacity by his client are privileged, and the attorney cannot be compelled to testify to them unless his client consents.

> But the mere fact the evidence relates to communications between attorney and client alone does not require its exclusion. Only confidential communications are protected. If it appears by extraneous evidence or from the nature of a transaction or communication that they were not regarded as confidential . . . or that they were made for the purpose of being conveyed by the attorney to others, they are stripped of the idea of a confidential disclosure and are not privileged. (Citations omitted).

*Dobias v. White*, 240 N.C. 680, 684-85, 83 S.E.2d 785, 788 (1954) (citations omitted). It is the substance of the communication that is protected and not the fact that there have been communications or the attorney's observations of the client's physical characteristics such as his demeanor, bearing, sobriety or dress. *United States v. Kendrick*, 331 F.2d 110, (4th Cir. 1964). *See generally* 1 *Brandis on North Carolina Evidence* § 62 (3rd ed. 1988).

> [T]he "essence" of the privilege is the protection of what was "expressly made confidential" or should have been "reasonably assume[d] . . . by the attorney as so intended." In determining whether it was to be reasonably "assume[d] that confidentiality was intended," it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.

*In Re Grand Jury Proceedings (John Doe)*, 727 F.2d 1352, 1356 (4th Cir. 1984). The privilege must be strictly construed. *Id.* at 1355. The burden is on the proponent of the privilege to demonstrate that the privilege should be applied. *United States v. (Under Seal)*, 748 F.2d 871 (4th Cir. 1984). The attorney-client privilege is rooted in the common law and must be distinguished from the various privileges created by statute, some of which specifically state that

## SCOTT v. SCOTT

[106 N.C. App. 606 (1992)]

they may be waived by the court "if disclosure is necessary to a proper administration of justice." *See* North Carolina General Statutes, Chapter 8, article 7.

We find that the trial court erred in "waiving" the attorney-client privilege to the extent that it received testimony from the attorneys regarding confidential communications. The bulk of the ordered testimony concerned the attorney's observations regarding defendant's demeanor, dress, behavior and understanding. Observations such as this by an attorney of his client do not fall within the protection of the privilege and are admissible. *But see Kendrick*, 331 U.S. 110, 115 (Sobeloff, C.J., and Bell, J., concurring specially) (lawyer's observations inextricably intertwined with communications therefore it cannot be said that the attorney's testimony was confined to nonconfidential matters). Our review of the transcript, however, reveals that the attorneys also testified to the substance of several communications made by the defendant to them in the course of their legal representation of her. These communications clearly fall within the category of "confidential communications." The privilege to decline to reveal confidential communications lies with the client and may not be "waived" by the trial court or the attorney. Plaintiff's argument that defendant waived her attorney-client privilege by putting her mental health at issue is meritless. Although we find error in the admission of the attorneys' testimony to the extent that it included confidential communications between the attorneys and the defendant, we find that under the facts of this case it was harmless error. Attorney Burgin's testimony regarding defendant's responses to his inquiries concerning the deed of trust and indemnification agreement was substantively irrelevant to this proceeding. Much of Attorney Messick's testimony regarding defendant's health was put before the court later by her physicians and was in fact the basis of her case.

We are cognizant of the rule that in a bench trial, the trial judge will be presumed to know the law and will disregard irrelevant or inadmissible evidence. Apparently, in this case, the trial judge ordered the attorneys to testify under the mistaken notion that because defendant had put on psychiatric evidence she had waived all privileges with regard to any evidence about her mental state, including the attorney-client privilege. Thus, we must assume that the trial judge improperly considered these confidential communications.

Nevertheless, given the evidence properly admitted on the issue of defendant's mental state, we do not believe that this error was prejudicial or that it warrants reversing the granting of the absolute divorce.

Affirmed.

Chief Judge HEDRICK and Judge WELLS concur.