IN RE BULLOCK

[229 N.C. App. 373 (2013)]

---

IN THE MATTER OF LAWRENCE BULLOCK III, Respondent

No. COA13-149

Filed 3 September 2013

**1. Appeal and Error—appeal not timely—writ of certiorari**

The Court of Appeals granted a writ of certiorari for a respondent who did not timely appeal a recommitment order but claimed that the failure to take timely action related to a disagreement with counsel.

**2. Appeal and Error—recommitment order—function of court of appeals**

It is not the function of the Court of Appeals to re-weigh the evidence in an appeal from a recommitment order.

**3. Mental Illness—recommitment order—findings**

A recommitment order was remanded for further findings where the trial court did not make adequate factual findings relevant to whether respondent was still dangerous. Recitation of the opposing testimonies does not resolve the conflicts raised by the testimony.

**4.  Mental Illness—recommitment order—conditional release**

The trial court did not err by not mentioning conditional release in its findings as part of a recommitment order. The record did not show that the trial court misunderstood the dispositional options, the trial court is not required to make a finding regarding conditional release in every case, and respondent failed to argue that such a disposition would be appropriate

**5.  Mental Illness—recommitment—forensic unit of hospital— no allegations of serious injury or death**

The trial court did not err by recommitting respondent to the forensic unit of Central Regional Hospital where respondent had been found not guilty by reason of insanity (NGRI) of first-degree burglary and second-degree kidnapping. Nothing in the plain language of N.C.G.S. § 122C-168.1 forbids committing NGRI acquittees to a forensic unit when they are charged with a crime without allegations of inflicting or attempting to inflict serious physical injury or death.

On Writ of Certiorari to review Order entered 12 June 2012 by Judge Robert F. Johnson in Superior Court, Granville County. Heard in the Court of Appeals 15 August 2013.

*Attorney General Roy A. Cooper III, by Assistant Attorney General Adam M. Shestak, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Hannah Hall, for respondent-appellant.*

STROUD, Judge.

Lawrence Bullock ("respondent") appeals from an order recommitting him to the forensic unit at Central Regional Hospital. We reverse and remand for entry of a revised order.

I. Procedural History

In 1999, respondent was found not guilty by reason of insanity (NGRI) of first degree burglary and second degree kidnapping. He was involuntarily committed to the forensic unit at Dorothea Dix Hospital ("Dorothea Dix"). He has had recommitment hearings at least every year since and was recommitted after each one to the forensic unit at either Dorothea Dix or Central Regional Hospital ("Central Regional"). On

**IN RE BULLOCK**

[229 N.C. App. 373 (2013)]

25 May 2012, respondent had another recommitment hearing and was recommitted again to the forensic unit at Central Regional.

## II. Factual Background

During respondent's recommitment hearing on 25 May 2012, his sister testified that she has

> seen a great deal of improvement [in respondent over the past several years] because [he] has been able to come to family outings, visits, and come to [her] home on several occasions just to have meals with [her] husband and [her] . . . . He [also] was able to attend two funerals . . . . [and her] daughter's wedding.

Respondent's sister also indicated that she would "feel very comfortable" with respondent having "more frequent visits" possibly "even for [an entire] weekend." This was the totality of the evidence that respondent presented in favor of his discharge.[1]

Respondent's doctor, Dr. Vance, testified about respondent's condition generally, including his diagnosis of schizoaffective disorder and the medications that he was taking. Dr. Vance also indicated that respondent "does not necessarily feel he needs to take" his medications and that if respondent ever stopped taking his medications he "would inevitably have a relapse," experience "mania," "psychosis," "delusional beliefs," and "auditory hallucinations," as well as become "more energized," "irritable," and "sexually inappropriate." Dr. Vance further testified that even at respondent's current medication level (which respondent has declined to modify), his condition periodically manifests itself, most recently in an episode two months prior to the hearing where respondent "was convinced that [his] family members were being kidnapped and held in the hospital."

Based on this evidence, the trial court concluded that respondent had failed to show that he no longer suffers from a mental illness or that he is no longer dangerous to others. The trial court accordingly recommitted respondent for another year to the forensic unit at Central Regional.

## III. Appellate Jurisdiction

Respondent appeals from the recommitment order entered 12 June 2012. He filed written notice of appeal on 23 July 2012. Appeals from

---

1. The parties stipulated that the testimony of respondent's brother-in-law would corroborate that of his sister.

involuntary commitment orders are appealable "as in civil cases." N.C. Gen. Stat. § 122C-272 (2011). Appeals in civil cases must generally be taken within thirty days of entry of the judgment. N.C.R. App. P. 3(c)(1). Thus, as he acknowledges, respondent failed to timely appeal the recommitment order.

Nonetheless, respondent filed a petition for writ of certiorari with this Court pursuant to Rule 21 of the North Carolina Rules of Appellate Procedure. He claims that his failure to take timely action related to a disagreement between him and his trial counsel as to whether, when, and how to note his appeal. The State opposes respondent's petition. We find that these circumstances are appropriate for issuance of the writ and we grant respondent's petition for writ of certiorari. Therefore, we have jurisdiction to consider the merits of respondent's appeal.

### IV.  Standard of Review

[W]e review [a recommitment] order as we would a commitment order. Thus, we must determine whether there is competent evidence to support the trial court's factual findings and whether these findings support the court's ultimate conclusion that respondent still has a mental illness and is dangerous to others.

*In re Hayes (Hayes I)*, 151 N.C. App. 27, 29–30, 564 S.E.2d 305, 307, *app. dismissed and disc. rev. denied*, 356 N.C. 613, 574 S.E.2d 680 (2002).

### V.  Analysis

Respondent argues on appeal that (1) he proved "by a preponderance of the evidence[] that he is no longer dangerous to others," (2) "the trial court erred by failing to consider the conditional release of [respondent] as an option," (3) "the trial court violated N.C. Gen. Stat. § 15A-1321 and [respondent's] right to due process by ordering that [he] be recommitted in the forensic unit" at Central Regional, and (4) "the trial court's findings of fact were insufficient to resolve the disputed issue of whether [respondent] was dangerous to others . . . ." (Original in all caps)

We hold that the trial court's findings are insufficient at present to support its conclusions. Therefore, we must reverse the order and remand for additional findings. Because the remaining issues are likely to recur on remand, we also hold that the trial court did not err in not making a finding about whether conditional release is appropriate in these circumstances and did not err or violate respondent's due process rights in committing him to a "forensic unit."

A.  Findings of Fact

During an NGRI acquittee recommitment hearing,

> The respondent shall bear the burden to prove by a pre-
> ponderance of the evidence that he (i) no longer has a
> mental illness as defined in G.S. 122C 3(21), or (ii) is no
> longer dangerous to others as defined in G.S. 122C 3(11)
> b. If the court is so satisfied, then the court shall order the
> respondent discharged and released. If the court finds that
> the respondent has not met his burden of proof, then the
> court shall order inpatient commitment be continued for
> a period not to exceed 180 days. The court shall make a
> written record of the facts that support its findings.

N.C. Gen. Stat. § 122C-276.1(c) (2011); *see* N.C. Gen. Stat. § 122C-276.1(d) (establishing that third and subsequent recommitment hearings are governed by the same standard and authorizing such recommitments for periods of up to one year). Here, the trial court concluded that respondent had not shown that he was no longer mentally ill or that he is no longer dangerous to others.

**[2]** Respondent first argues that the trial court erred in concluding that he failed to meet his burden under the statute given the evidence presented. In making this argument, respondent is simply asking this Court to reweigh the evidence in his favor. "It is not the function of this Court to reweigh the evidence on appeal." *Garrett v. Burris*, ___ N.C. App. ___, ___, 735 S.E.2d 414, 418 (2012), *aff'd per curiam*, ___ N.C. ___, 742 S.E.2d 803 (2013). Therefore, this argument is meritless.

**[3]** Respondent next argues that the trial court failed to make sufficient findings of fact to support its conclusion that respondent has failed to show that he is no longer dangerous to others. He does not contend that he is no longer mentally ill.

> "Dangerous to others" means that within the relevant past,
> the individual has inflicted or attempted to inflict or threat-
> ened to inflict serious bodily harm on another, or has
> acted in such a way as to create a substantial risk of seri-
> ous bodily harm to another, or has engaged in extreme
> destruction of property; and that there is a reasonable
> probability that this conduct will be repeated. Previous
> episodes of dangerousness to others, when applicable,
> may be considered when determining reasonable prob-
> ability of future dangerous conduct. Clear, cogent, and

convincing evidence that an individual has committed a homicide in the relevant past is prima facie evidence of dangerousness to others.

N.C. Gen. Stat. § 122C-3(11)(b) (2011).

"[A] trial court must . . . make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005) (citation omitted). "Recitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge." *In re M.R.D.C.*, 166 N.C. App. 693, 699, 603 S.E.2d 890, 894 (2004) (citation and quotation marks omitted), *disc. rev. denied*, 359 N.C. 321, 611 S.E.2d 413 (2005).

The majority of the trial court's "findings" in its 12 June 2012 order are recitations of testimony, indicating that witnesses "testified" about particular topics. The trial court did not make actual findings regarding the material facts, either by making separate findings or by finding specific testimony in the record credible. Omitting those findings that merely recite testimony, we are left with only the following relevant facts to review:

> 1.  The Respondent was committed to Dorothea Dix Hospital pursuant to North Carolina General Statute 15A-1321 having been found not guilty by reason of insanity to the crimes of first degree burglary and second degree kidnapping in Vance County case files 98-CRS-12164 through 12165.
>
> 2.  The Respondent has been hospitalized continuously at the forensic program run by the Department of Health and Human Services since August, 1999. His present commitment is to expire May 25, 2012.
>
> . . . .
>
> 4.  . . . Dr. Vance has been the treating attending physician for Mr. Bullock for slightly less than one year, although he has worked with Mr. Bullock for at least three years. Dr. Vance has examined Respondent and has reviewed the Respondent's medical records. The diagnosis of the Respondent is schizo-affective disorder and that is the primary diagnosis. . . .

7. [The trial court lists the medications respondent is on].

. . . .

10. . . . At this point in time the Respondent's treatment team has not discussed the increase of any privileges and this is in part because the Respondent has not adequately demonstrated that he is not dangerous to society. . . .

11. The Court does note that in previous court orders apparently the Respondent's treatment team has been granted authority to allow Respondent privileges to attend on-campus activities at the forensic unit run by DHHS under a one-to-ten supervision, with one staff to no more than ten patients, and to attend off-campus activities under a one-to-ten supervision, and also to have a four-hour unsupervised pass daily on campus.

The order states that Dr. Vance testified that respondent "does not necessarily feel he needs to take" his medications, let alone increase the dosage, and that if respondent were "to stop the medication . . . . [h]e would inevitably have a relapse." A relapse would likely result in respondent experiencing "mania," "psychosis," "delusional beliefs," and "auditory hallucinations," as well as him becoming "more energized," "irritable," and "sexually inappropriate." Indeed, Dr. Vance testified that even while respondent was medicated and under the supervision of his treatment team, he had been suffering auditory hallucinations and believed that family members had been kidnapped and held in the hospital. Based on his review of respondent's medical records and his interactions with respondent, Dr. Vance concluded that respondent is not ready to be discharged.

The evidence does support the court's findings that Dr. Vance testified as noted above, but the trial court did not find that these assertions were facts. Nor did the trial court find that it considered this testimony credible, as opposed to its similar recitation of defendant's sister's testimony including her statement that she did not think defendant "was a harm to himself or anyone else." Recitation of the opposing testimonies do not resolve the conflicts raised by the testimony but merely recognizes that the conflict exists. The trial court must weigh all of the evidence and in its findings, resolve the conflicts raised, as "[r]ecitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge." *In re M.R.D.C.,* 166 N.C. App. at 699, 603 S.E.2d at 894.

Although the burden is on respondent to show that he is no longer dangerous, the trial court must make adequate factual findings relevant to whether respondent is still dangerous or not. It failed to do so here. Therefore, we must reverse the trial court's order and remand for entry of a revised order with appropriate findings of fact sufficient to support the trial court's conclusions of law.

## B.　Conditional Release

**[4]** Although we have concluded that we must remand for entry of a revised order, we will address the remaining issues raised by respondent because these issues will not be resolved on remand even if the trial court makes findings of fact consistent with the statements of Dr. Vance in the "testimonial" findings of fact as discussed above. Respondent argues that the trial court erred in not considering or making a finding about whether conditional release would be an appropriate disposition. Respondent effectively raises three issues: (1) whether the trial court misunderstood the available dispositional options; (2) whether the trial court must make a finding regarding conditional release in every case; and (3) whether the trial court should have found him eligible for conditional release in this case.

> N.C. Gen. Stat. §§ 122C–264, –268.1, –276.1, and –277—
> read *in pari materia*—establish the trial court's authority
> to order a conditional release as a dispositional option in
> § 122C–268.1 and § 122C–276.1 hearings.

*In re Hayes (Hayes II)*, 199 N.C. App. 69, 82, 681 S.E.2d 395, 403 (2009), *disc. rev. denied*, 363 N.C. 803, 690 S.E.2d 694, *cert. denied*, 363 N.C. 803, 690 S.E.2d 695 (2010).

In *Hayes II*, the respondent was an NGRI acquittee who had been charged with four counts of first degree murder, five counts of felonious assault with a deadly weapon, and two counts of assault on a law enforcement officer. *Hayes II*, 199 N.C. App. at 70, 681 S.E.2d at 396. Hayes was found not guilty by reason of insanity on all charges and was involuntarily committed to a psychiatric hospital pursuant to N.C. Gen. Stat. § 15A–1321. *Id.* at 70-71, 681 S.E.2d at 396-97. From 1988 to 2007, Hayes had yearly recommitment hearings and was recommitted after each one. *Id.* at 71, 681 S.E.2d at 397.

During the 2007 hearing, Hayes presented numerous psychologists and psychiatrists, all of whom advocated for his discharge; even the State's expert psychologist advocated for Hayes' release, just a conditional one. *Id.* at 71–73, 681 S.E.2d at 397–98. After receiving this

testimony, the trial court recommitted Hayes, finding that Hayes would "be dangerous to others in the future *if unconditionally released with no supervision* . . . ." *Id.* at 85, 681 S.E.2d at 405.

Hayes appealed the trial court's recommitment order. *Id.* at 74, 681 S.E.2d at 399. He argued that "the trial court erred in failing to consider a conditional release as a dispositional option" during his recommitment hearing. *Id.* at 70, 681 S.E.2d at 396. The State argued both at trial and on appeal that the trial court was not even authorized to conditionally release Hayes. *Id.* at 76, 681 S.E.2d at 400. Although Hayes had not properly "present[ed] a distinct argument to the trial court that a conditional release was a possible disposition," we invoked Rule 2 to decide the merits of his claim. *Id.* at 76–78, 681 S.E.2d at 400–01.

We concluded that "it is apparent from the trial court's findings of fact that its assumption that it had no authority to order a conditional release played a fundamental role in its decision," to recommit Hayes and that this assumption was a "misapprehension as to the applicable law." *Id.* at 85, 681 S.E.2d at 405. Therefore, we were unable to "determine that the trial court, if aware that a conditional release was a legal disposition, would have still recommitted Hayes" because it incorrectly treated its dispositional options as binary, looking only to recommitment and full discharge. *Id.* As a result, we remanded for a *de novo* hearing regarding whether Hayes was entitled to a conditional release. *Id.*

Here, the trial court's order does not affirmatively indicate that it considered conditionally releasing respondent, but without any indication to the contrary, "[w]e presume that the trial court was aware of, and applied, the law as set forth in" *Hayes II. Lawing v. Lawing*, 81 N.C. App. 159, 178, 344 S.E.2d 100, 112 (1986); *Scott v. Scott*, 106 N.C. App. 606, 613, 417 S.E.2d 818, 823 (1992) ("in a bench trial, the trial judge will be presumed to know the law."), *aff'd*, 336 N.C. 284, 442 S.E.2d 493 (1994).

There is nothing in the record to suggest that the trial judge misunderstood the available dispositional options. The trial court's statement that it was considering whether to discharge respondent or recommit him does not show that it misunderstood the applicable law. Rather, unlike in *Hayes II*, neither defendant nor the State presented any evidence that a conditional release would be medically appropriate. Even the testimony of defendant's sister, which was the only evidence presented by defendant, does not mention conditional release. A trial court is not required to make a finding as to conditional release in every case. Trial courts are not normally required to resolve an issue that is not

raised by the parties and the evidence. *See Small v. Small*, 107 N.C. App. 474, 477, 420 S.E.2d 678, 681 (1992) ("In a trial without a jury, it is the duty of the trial judge to resolve all issues *raised by the pleadings and the evidence* . . . ." (emphasis added)). Neither *Hayes II* nor the statutes require the trial court to make a finding as to whether conditional release is appropriate where neither the evidence nor the parties raises that issue.

Finally, respondent did not argue to the trial court that he should be conditionally released. Therefore, the issue of whether respondent should be conditionally released has not been preserved for our review. N.C.R. App. P. 10(a)(1).[2]

Contrary to respondent's arguments, the record does not show that the trial court misunderstood the dispositional options, the trial court is not required to make a finding regarding conditional release in every case, and in this case respondent failed to argue that such a disposition would be appropriate. Therefore, the trial court did not err by "failing" to mention conditional release in its findings.

C. Commitment to the Forensic Unit

[5] In his brief, respondent points to authority granting him procedural due process protections during his recommitment hearings. *E.g.*, *In re Reed*, 39 N.C. App. 227, 249 S.E.2d 864 (1978). Respondent then argues that his "right to due process" was violated because he was placed in the forensic unit at Central Regional, which is more restrictive than the other units.[3]

He contends that this placement violated N.C. Gen. Stat. § 15A-1321(a) because the crimes of first degree burglary and second degree kidnapping

---

2. Respondent requests that we invoke Rule 2, as we did in *Hayes II*, and waive his failure to preserve this issue. Given that there was no witness who testified about whether conditional release was appropriate and the only medical testimony supported recommitment, we are not convinced that applying Rule 2 in this case would work "manifest injustice" to respondent. *See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (reaffirming that Rule 2 is only to be invoked "cautiously" and in "exceptional circumstances.").

3. *See generally* 10A N.C. Admin. Code 28A.0102(b)(16)(2012) ("'Forensic Division' means the unit at [a psychiatric] [h]ospital which serves clients who are . . . (B) found not guilty by reason of insanity [or]. . . (D) deemed to require a more secure environment to protect the health, safety and welfare of clients, staff and the general public."); 10A N.C. Admin. Code 28C.0308 (2012) (allowing for routine searches of the forensic unit); 10A N.C. Admin. Code 28D.0403 (allowing a court order to supersede the normal rules for determining when a "forensic patient" can refuse psychotropic medication and not face forcible administration of the drug).

do not involve allegations of "inflict[ing] or attempt[ing] to inflict serious physical injury or death" on another person, and the current iteration of § 15A-1321 indicates that in such a situation an NGRI acquittee should be placed in a "State 24-hour facility designated pursuant to G.S. 122C-252." *See* N.C. Gen. Stat. § 15A-1321(a) (2011). Respondent does not explain how this claim implicates his due process rights. Thus, the only issue is whether the trial court misunderstood its statutory authority in committing respondent to the forensic unit at Central Regional. N.C.R. App. P. 28(b)(6).

"An alleged error in statutory interpretation is an error of law, and thus our standard of review for this question is *de novo*." *Armstrong v. North Carolina State Bd. of Dental Examiners*, 129 N.C. App. 153, 156, 499 S.E.2d 462, 466 (citations omitted), *disc. rev. denied and app. dismissed*, 348 N.C. 692, 511 S.E.2d 643 (1998), *cert. denied*, 525 U.S. 1103, 142 L.Ed. 2d 770 (1999).

Respondent was initially committed under N.C. Gen. Stat. § 15A-1321. The current iteration of § 15A-1321 differentiates between NGRI acquittees who were charged with a crime "wherein it is alleged that the defendant inflicted or attempted to inflict serious physical injury or death" and those who were not. If not alleged, the acquittee is to be committed to a "State 24-hour facility designated pursuant to G.S. 122C-252." N.C. Gen. Stat. § 15A-1321(a). If defendant is charged with a crime wherein "inflict[ing] or attempt[ing] to inflict serious physical injury or death" is alleged, the acquittee is to be committed to "a Forensic Unit operated by the Department of Health and Human Services, where the [acquittee] shall reside until the [acquittee's] release . . . ." N.C. Gen. Stat. § 15A-1321(b). Until this new version was enacted, none of the commitment statutes mentioned the forensic unit. Even now, only § 15A-1321(b) refers to that unit.

The current version of N.C. Gen. Stat. § 15A-1321 "applies to offenses committed on and after" 1 January 1999. 1999 N.C. Sess. Laws 212, § 12.35B(b). Respondent's offenses occurred in November of 1998; thus, the current version of the statute is not applicable. The applicable version of § 15A-1321 provides only that "[w]hen a defendant charged with a crime is found not guilty by reason of insanity . . . the presiding judge shall enter an order . . . committing the defendant to a State 24-hour facility designated pursuant to G.S. 122C-252." N.C. Gen. Stat. § 15A-1321 (1997).[4]

---

4. We do note that the original commitment order purported to commit respondeent under § 15A-1321(b), which as outlined above, does not apply to respondent. Nevertheless, respondent did not appeal from that order and it is not before us.

The applicable version of N.C. Gen. Stat. § 15A-1321 did not define a "State 24-hour facility."[5] Chapter 122C, however, did—and still does—define both "State facility" and "24-hour facility." N.C. Gen. Stat. § 122C-3(14) (1997); N.C. Gen. Stat. § 122C-3(14)(2011). A "State facility" is "a facility that is operated by the Secretary" of DHHS. N.C. Gen. Stat. § 122C-3(14)(f). A "24-hour facility" is "a facility that provides a structured living environment and services for a period of 24 consecutive hours or more and includes hospitals that are facilities under [Chapter 122C]." N.C. Gen. Stat. § 122C-3(14)(g). It follows, then, that a "State 24-hour facility" is a 24-hour facility operated by DHHS. Central Regional—where respondent was committed—is such a facility, as was Dorothea Dix.[6]

The statutes that govern the hearing at issue here do not distinguish between a forensic unit and any other unit within a 24-hour facility. Recommitment hearings for NGRI acquittees are conducted under § 122C-276.1. That section states that "proceedings of the rehearing shall be governed by the same procedures provided by G.S. 122C-268.1." N.C. Gen. Stat. § 122C-276.1. Section 122C-268.1(i), in turn, requires the trial court to "order that inpatient commitment continue at a 24-hour facility" if it finds that the respondent has not shown that he is eligible for release. N.C. Gen. Stat. § 122C-268.1(i) (2011). The statute does not mention whether an NGRI acquittee must be committed to a particular unit; it only requires that the acquittee be committed to a 24-hour facility.

Respondent argues in his reply brief that even if the new version of N.C. Gen. Stat. § 15A-1321 does not apply to him, neither the old version of § 15A-1321 nor § 122C-268.1 "authorize" his commitment to a forensic unit. We are not convinced that NGRI acquittees committed under N.C. Gen. Stat. § 15A-1321(a), the prior version of § 15A-1321, or § 122C-268.1 may not be committed to a forensic unit within a 24-hour facility simply because a subset of NGRI acquittees now *must* be committed to such a unit under N.C. Gen. Stat. § 15A-1321(b).

"The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Dickson v. Rucho*, 366 N.C. 332, 339, 737 S.E.2d 362, 368 (2013)

---

5. The current version of this statute also does not define that term.

6. N.C. Gen. Stat. § 122C-181(a)(1)(a1)(2011) (authorizing the Secretary of DHHS to operate Central Regional Hospital); N.C. Gen. Stat. § 122C-252 (2011) (authorizing the Secretary of DHHS to designate 24-hour facilities); 10A N.C. Admin. Code 26C.0104(d) (2012) (noting that the list of designated facilities is available on the DHHS website); N.C. Dep't of Health and Human Serv., North Carolina Facilities Designated for the Custody and Treatment of Individuals Under Petitions for Involuntary Commitment, *available* at http://www.ncdhhs.gov/mhddsas/services/IVC/ivcdesignatedfacilities.xls (designating Central Regional as a 24-hour facility).

(citation and quotation marks omitted). A forensic unit is not a separate facility from the 24-hour facility—it is simply a particular part of that facility. If the legislature intended to specify a particular unit for those NGRI acquittees committed under the old N.C. Gen. Stat. § 15A-1321, the new N.C. Gen. Stat. § 15A-1321(a), or N.C. Gen. Stat. § 122C-168.1 they could have done so, as they did in § 15A-1321(b). Instead, the only acquittees for whom the legislature specified a particular unit were those committed under § 15A-1321(b). It makes sense that the legislature would determine that those insanity acquittees charged with a crime wherein "inflict[ing] or attempt[ing] to inflict serious physical injury or death" is alleged must be committed to the most secure unit, while leaving such determinations to the informed discretion of the treating professionals for other NGRI acquittees, subject of course to any other statutory and regulatory requirements.

The statutes under which respondent was committed require him to be committed to a 24-hour facility. He was committed to just such a facility. Nothing in the plain language of N.C. Gen. Stat. § 122C-168.1 forbids the commitment of NGRI acquittees charged with a crime wherein "inflict[ing] or attempt[ing] to inflict serious physical injury or death" is not alleged to a forensic unit. N.C. Gen. Stat. § 15A-1321(b) does not change this conclusion. Respondent has not pointed us to anything else that would forbid his commitment to the forensic unit or require his commitment to another unit. Therefore, even assuming he is correct that he would not qualify for commitment under N.C. Gen. Stat. § 15A-1321(b), the trial court did not err in committing respondent to the forensic unit of Central Regional.

## VI. Conclusion

The trial court failed to make sufficient findings to support its conclusion. Nonetheless, there is sufficient evidence in the record to support such findings, so we remand for entry of a revised order with appropriate findings of fact and conclusions of law consistent with those findings. We also hold that the trial court was not required to make a finding of whether conditionally releasing respondent was appropriate because it was presented with no meaningful evidence that his conditional release was medically appropriate. Further, recommitment to the forensic unit at Central Regional did not violate N.C. Gen. Stat. § 15A-1321. For these reasons, we reverse and remand for entry of a revised order.

REVERSED and REMANDED.

Judges CALABRIA and DAVIS concur.