GENEVA EDWARDS MABRY v. RUSSELL MABRY.

(Filed 23 November, 1955.)

**1. Divorce § 2d—**

The statutory right to divorce on the ground of insanity requires that insanity must have been the reason for the separation, but does not require any greater proof of separation and its continuance than is required in a divorce based on two years separation.

**2. Same—**

The statutory requirement for divorce on the ground of insanity that the insane spouse should have been confined in an institution for five consecutive years next preceding the bringing of the action is for the purpose of

determining the mental condition of the spouse after five consecutive years' treatment for mental disorder, in order that the incurability or permanence of the mental disorder, which constitutes the basis for the right to the divorce, may be established. G.S. 50-5 (6), as amended.

**3. Same—**

The fact that a husband, during his five years of confinement in the State Hospital, had twice been released to his relatives for short probationary periods, does not preclude the wife's right to divorce on the ground of his insanity, since such release on probation did not discharge the husband or remove him from the constructive custody of the State Hospital. G.S. 50-5 (6), G.S. 122-67.

APPEAL by plaintiff from *Carr, J.,* May Term, 1955, of WARREN.

The plaintiff, a resident of Warren County, North Carolina, instituted this action on 30 November, 1954, against the defendant for absolute divorce under the provisions of G.S. 50-5, subsection 6, as amended by Chapter 1087 of the 1953 Session Laws of North Carolina, alleging that the defendant had been confined for more than five years in the State Hospital at Raleigh, North Carolina, and was incurably insane. Summons was served on Dr. Walter A. Sikes, Superintendent of said Hospital, on 3 December, 1954. James D. Gilliland was appointed guardian *ad litem* for the defendant on 1 December, 1954, and summons was served on him on 6 December, 1954, and an answer was filed by the guardian in behalf of his ward on 21 January, 1955.

When this cause was heard in the trial below, the evidence tended to show these facts: That the plaintiff and defendant were married on 27 May, 1939; that no children were born of the marriage; that for two years prior to the commitment of the defendant to the State Hospital he was in ill health and contributed nothing to the plaintiff's support, nor has he contributed anything either directly or indirectly since his commitment; that the defendant was committed to the State Hospital on 14 June, 1949; and that the plaintiff at no time since the commitment has lived with the defendant. That during the time of the defendant's confinement in the State Hospital he was released on probation on two different occasions: once for a period of ten days and another for a period of six months, and while the defendant was on probation he did not reside with the plaintiff but with his relatives in Halifax County. He has never been discharged and is still an inmate of the State Hospital.

The testimony of Dr. Walter A. Sikes is to the effect that the defendant is incurably insane. Likewise, Dr. C. H. Woodburn, a regularly practicing physician in Warren and Halifax Counties, testified that he treated the defendant prior to the date of his commitment and is famil-

iar with his mental and physical condition and that in his opinion the defendant is incurably insane.

In his charge to the jury the trial judge charged in substance that the releases of the defendant on probation did not constitute such an act on the part of the Hospital as to terminate the period of confinement within the meaning of the statute. The jury answered the issues as follows:

"1. Were the plaintiff and defendant married, as alleged in the amended complaint?

"Answer: Yes.

"2. Have the plaintiff and the defendant lived separate and apart from each other continuously for more than five (5) years next preceding the filing of the complaint, as alleged in the complaint?

"Answer: Yes.

"3. Is the defendant suffering from incurable insanity?

"Answer: Yes.

"4. Has the defendant been confined for five (5) consecutive years next preceding the bringing of this action in an institution for the care and treatment of the mentally disordered?

"Answer: Yes.

"5. Has the plaintiff been a resident of the State of North Carolina for six (6) months or more preceding the filing of the complaint?

"Answer: Yes."

The plaintiff tendered an appropriate judgment on the verdict but the trial judge refused to sign it on the ground that in his opinion his instruction, referred to above, was erroneous. He therefore set the verdict aside and the plaintiff appeals, assigning error.

*John Kerr, Jr., for plaintiff.*
*James D. Gilliland, guardian ad litem for defendant.*

DENNY, J. The sole question for determination on this appeal is whether or not the two periods of probation referred to above constitute such release from confinement in the State Hospital as to defeat the plaintiff's right to a divorce.

The pertinent part of G.S. 50-5, subsection 6, as amended, reads as follows: "In all cases where a husband and wife have lived separate and apart for five consecutive years, without cohabitation, and are still so living separate and apart by reason of the incurable insanity of one of them, the court may grant a decree of absolute divorce upon the petition of the sane spouse: Provided, the evidence shall show that the insane spouse is suffering from incurable insanity, and has been confined for five consecutive years next preceding the bringing of the action in an institution for the care and treatment of the mentally disordered."

Insanity is not generally recognized in any of the States of the United States as a ground for divorce unless made so by statute. *Lee v. Lee*, 182 N.C. 61, 108 S.E. 352. A majority of the States, however, have adopted statutes which authorize the granting of a divorce on such ground. The right to divorce, pursuant to the terms of our statute, is bottomed on the ground of incurable insanity, and such insanity must have been the reason for the separation of the parties. We do not construe this statute to require any greater proof of the separation and its continuance during the period involved in this action than is required in a divorce based on two years separation. G.S. 50-5, subsection 4. This being so, there must have been some specific legislative intent that motivated the enactment of the requirement that the insane spouse must have been confined "in an institution for the care and treatment of the mentally disordered," for a period of five consecutive years, before the sane spouse may obtain a divorce.

The State is interested in the marital status of .its citizens, and it guards with care the marital rights as well as the property rights of its insane. Therefore, we think the purpose of the above provision is to require that a person alleged to be incurably insane, shall not have his or her marital status altered until such person has been committed to an institution for the care and treatment of the mentally disordered for a period of five successive years in order that it may be ascertained whether or not the inmate's insanity is incurable. Mere confinement for a period of five successive years in such an institution would fulfill the literal meaning of the statute but it would not be in compliance with its spirit or purpose. What the State is interested in is simply this: What is the mental condition of this defendant after having been treated for five consecutive years for his mental disorder? Certainly, by the use of the word "confined" in the statute, the Legislature did not contemplate such confinement as would require an inmate to be at all times under lock and key. Moreover, this defendant has been at all times, since 14 June, 1949, in the actual or constructive custody of the State Hospital. He has never been discharged. When he was permitted to leave the hospital for the periods referred to hereinabove, he was on probation. Probation simply means a period of testing, or trial. This is a method that may be used to ascertain whether or not a mentally deranged person has improved to the extent that he or she might be discharged. While on the other hand it might be used if the patient is docile and harmless, to ascertain whether or not a change of environment would be helpful to him. Not all persons suffering from incurable insanity are violent or dangerous.

Furthermore, it is expressly provided in G.S. 122-67, in pertinent part, that "When it shall appear that any mentally disordered person under

commitment to and confined in a hospital for the mentally disordered . . . when he shall have become no longer dangerous to the community and to himself, or when it shall appear that suitable provision can be made for the alleged mentally disordered person so that he will not be injurious or dangerous to himself or the community, the superintendent of the hospital may in his discretion release him on probation to the care of his guardian, relative, friends or of any responsible person or agency in the community, and may receive him back into the hospital without further order of commitment during the continuance of the order of commitment which shall not have been terminated by the action of the superintendent in releasing him on probation."

In the case of *Dodrer v. Dodrer,* 183 Md. 413, 37 A. 2d 919, the Maryland Court of Appeals in considering the identical question we now have before us, said: "It does not matter for the purposes of the divorce statute whether the insane person is able to perform any work, or to be outside of the hospital, or other place of confinement at times. The point with which our Legislature is dealing is whether her mental condition is such that she must have supervision of the kind given by a hospital. The fact that a patient is harmless enough to be placed outside of the hospital in a private home, although still kept under hospital supervision, does not indicate that she is not incurably insane. It is not intended to grant the right of divorce only from those persons who are so violently insane that they have to be incarcerated at all times. The test is not the manifestation of the mental disease. It is permanence and incurability. . . . We think a construction should be placed upon the insanity divorce statute, based, not upon a strict interpretation of its words, but upon what it was intended to do. Real intent must prevail over literal intent."

Likewise, in *Jacobs v. Jacobs,* 45 Del. 544, 76 A. 2d 742, it is said: "The requirement in our statute, that there should have been supervision by an institution for a period of at least five years, can be nothing more than a safeguard that complaints for divorce on the ground of insanity shall not be filed lightly, or without just cause."

We also find that the English cases are in accord with the view expressed in *Dodrer v. Dodrer, supra.* The English Matrimonial Causes Act of 1937, permitting actions for divorce on the ground that the defendant spouse is incurably insane, requires also that the insane spouse shall have been continually under care and treatment for a period of at least five years immediately preceding the petition, and that a person of unsound mind shall be considered to have been under care and treatment while detained in pursuance of any order under the lunacy and mental treatment acts. A number of cases have arisen in England under the provisions of the above act, involving what does and what

does not constitute an interruption of care and treatment preventing the fulfillment of a necessary condition of the divorce. See 24 A.L.R. 2d, Anno.: Divorce or Separation—Insanity, page 873, *et seq.*

In the case of *Safford v. Safford* (Eng.) (1944), Probate and Divorce, 61-CA, the court held that absences within the five-year period, where the husband was placed in every instance under the care of a relative, were not interruptions of the detention required by the Matrimonial Causes Act, but that the reception or detention order remained in full force during the entire period. *Lord Greene, M. R.,* speaking for the Court, said: "The absence is merely a method of the care and treatment which is given under and by virtue of the reception order and pursuant to the statutory powers given to the persons authorized to receive the patient under the order. In fact, the learned President is, I think, paying too much attention to detention as a physical fact and is not regarding it, as I think it ought to be regarded, as a status."

The District Court of Appeals, 2nd District, Division 1, California, in the case of *Finkelstein v. Finkelstein,* 88 App. 2d Cal., 198 P. 2d 98, in construing a question similar to that before us, held that when the insane spouse was paroled to the defendant's mother, the detention ended. Hence, it was held that the defendant had not been detained for a period of three years as required by the statute.

We have concluded, however, that the spirit and purpose of the provisions of G.S. 50-5, subsection 6, as amended, have been met; that the periods of probation were permissible under the above statute as well as under G.S. 122-67, and may be deemed not to have constituted an interruption of the confinement or a discharge from the hospital within the meaning of these statutes. Therefore, the order setting aside the verdict below is reversed and the cause remanded for judgment on the verdict.

Reversed and remanded.