WILLIAM C. SCOTT, SR. v. JANE MAYO SCOTT

No. 306PA92

(Filed 6 May 1994)

1. **Divorce and Separation § 68 (NCI4th) — divorce — defendant's failure to show incurable insanity**

The trial court did not err by concluding that defendant failed to prove that she is incurably insane within the meaning of N.C.G.S. § 50-5.1 so as to require plaintiff to proceed under that statute in order to obtain an absolute divorce from defendant, although the evidence was undisputed that defendant suffers from an incurable mental illness, where (1) defendant failed to meet the procedural requirements set forth in N.C.G.S. § 50-5.1 because only one of her medical experts associated with a four-year medical school made any determination of defendant's condition three years prior to the institution of the divorce action, and (2) the evidence supported the trial court's finding that defendant's mental illness has been controllable with medication a majority of the time and she has been able to function in normal daily situations such as maintaining a household, paying bills and handling financial matters, hosting social functions, shopping, maintaining her driver's license, and operating a motor vehicle.

SCOTT v. SCOTT

[336 N.C. 284 (1994)]

Am Jur 2d, Divorce and Separation §§ 88 et seq.

Requisites of proof of insanity as a ground for divorce. 15 ALR2d 1135.

Insanity as substantive ground of divorce or separation. 24 ALR2d 873.

Charge of insanity or attempt to have spouse committed to mental institution as ground for divorce or judicial separation. 33 ALR2d 1230.

2. Divorce and Separation § 67 (NCI4th)— divorce—definition of incurable insanity

In order to bar an action for divorce based on one year's separation on the ground that defendant is incurably insane, prior cases will be followed which require that defendant's "mental impairment must be to such an extent that defendant does not understand what he or she is engaged in doing, and the nature and consequences of the act." The term "incurable insanity" in N.C.G.S. § 50-5.1 will not be redefined to equate it with severe and persistent mental illness as defined in N.C.G.S. § 122C-3(33a) of the Mental Health, Developmental Disorders, and Substance Abuse Act of 1985.

Am Jur 2d, Divorce and Separation §§ 88 et seq.

Insanity as substantive ground of divorce or separation. 24 ALR2d 873.

Charge of insanity or attempt to have spouse committed to mental institution as ground for divorce or judicial separation. 33 ALR2d 1230.

3. Divorce and Separation § 68 (NCI4th)— divorce based on one year's separation—defense of incurable insanity—burden of proof

In order to bar an action for divorce based on one year's separation, defendant bears the burden of persuasion that he or she is incurably insane within the meaning and purpose of N.C.G.S. § 50-5.1.

Am Jur 2d, Divorce and Separation §§ 88 et seq.

Insanity as substantive ground of divorce or separation. 24 ALR2d 873.

SCOTT v. SCOTT

[336 N.C. 284 (1994)]

**Charge of insanity or attempt to have spouse committed to mental institution as ground for divorce or judicial separation. 33 ALR2d 1230.**

Justice MITCHELL concurring.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 106 N.C. App. 606, 417 S.E.2d 818 (1992), affirming judgment of divorce entered 16 October 1990 by Washburn, J., in the District Court, Alamance County. Heard in the Supreme Court 17 March 1993.

*Wyatt Early Harris Wheeler & Hauser, by A. Doyle Early, Jr., for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, by Carole S. Gailor, Susan D. Crooks, and Susan S. McFarlane, for defendant-appellant.*

PARKER, Justice.

In this action for divorce, defendant contends the Court of Appeals erred in affirming the trial court's entry of judgment of divorce based on one year's separation pursuant to N.C.G.S. § 50-6. We disagree and affirm the decision of the Court of Appeals.

Plaintiff filed this action for divorce from defendant based on one year's separation. In response, defendant counterclaimed for alimony and equitable distribution, moved to dismiss on the grounds that N.C.G.S. § 50-6 was inapplicable because she suffered from incurable mental illness, and asserted N.C.G.S. § 50-5.1 as an affirmative defense. Although she has broken her argument into numerous subparts, the crux of defendant's argument is that, under the evidence presented, plaintiff was not entitled to an absolute divorce pursuant to N.C.G.S. § 50-6 but was required to proceed under N.C.G.S. § 50-5.1.

Defendant contends *inter alia* that (i) N.C.G.S. § 50-5.1 provides the exclusive means by which one may divorce a spouse suffering from incurable mental illness; (ii) defendant's undisputed evidence complied with the requirements of N.C.G.S. § 50-5.1; (iii) the trial court's finding of fact, that defendant was able to function in normal daily situations, was not supported by the evidence and did not support the conclusion that defendant was not incurably insane within the meaning of N.C.G.S. § 50-5.1; and (iv) the Court of

SCOTT v. SCOTT

[336 N.C. 284 (1994)]

Appeals applied an unduly restrictive definition of incurable insanity.

In North Carolina two statutes authorize the grant of an absolute divorce. One, applicable to sane spouses, permits divorce based on one year's separation. N.C.G.S. § 50-6 (1987). The other, applicable to divorce from an incurably insane spouse, requires three years' separation by reason of the incurable insanity of one spouse. N.C.G.S. § 50-5.1 (1987). As the Court of Appeals correctly held, N.C.G.S. § 50-5.1 provides the sole remedy for a plaintiff seeking divorce from an incurably insane spouse. *Scott v. Scott*, 106 N.C. App. 606, 609, 417 S.E.2d 818, 821 (1992). As stated in *Lawson v. Bennett*, 240 N.C. 52, 81 S.E.2d 162 (1954):

> In this connection, the General Assembly has seen fit to legislate specifically and specially in respect to the granting of absolute divorce in all cases where a husband and wife have lived separate and apart by reason of the incurable insanity of one of them, upon the petition of the sa[n]e spouse. G.S. 50-5, subsection 6, as amended [now N.C.G.S. § 50-5.1].

> Therefore, in keeping with well established principle the remedy provided is exclusive. . . . "The courts everywhere are in accord upon the proposition that if a valid statutory method of determining a disputed question has been established, such remedy so provided is exclusive and must be first resorted to and in the manner specified therein."

*Id.* at 58, 81 S.E.2d at 167 (quoting *Committee on Grievances of Bar Association v. Strickland*, 200 N.C. 630, 633, 158 S.E. 110, 112 (1931)).

In the present case defendant contends the evidence of her incurable mental illness brings her within the purview of N.C.G.S. § 50-5.1. The portion of N.C.G.S. § 50-5.1 relied upon by defendant in her brief is as follows:

> Provided further, the evidence shall show that the insane spouse is suffering from incurable insanity, and has been confined or examined for three consecutive years next preceding the bringing of the action . . . .

> . . . .

> In lieu of proof of incurable insanity and confinement for three consecutive years next preceding the bringing of the

SCOTT v. SCOTT

[336 N.C. 284 (1994)]

action in an institution for the care and treatment of the mentally disordered, or the adjudication of insanity, as prescribed in the preceding paragraphs, it shall be sufficient if the evidence shall show that the insane spouse was examined by two or more members of the staff of one of this State's accredited four-year medical schools, both of whom are medical doctors, at least three years preceding the institution of the action for divorce with a determination at that time by said staff members that said spouse is suffering from incurable insanity, that such insanity has continued without interruption since such determination; provided, further, that sworn statements signed by the staff members of the accredited medical school who examined the insane spouse at least three years preceding the commencement of the action shall be admissible as evidence of the facts and opinions therein stated as to the mental status of said insane spouse as to whether or not said insane spouse was suffering from incurable insanity; provided, further, that proof of incurable insanity under this section existing after the institution of the action for divorce shall be furnished by the testimony of two reputable physicians, one of whom shall be a psychiatrist on the staff of one of the State's accredited four-year medical schools, and one a physician practicing regularly in the community wherein such insane person resides.

N.C.G.S. § 50-5.1 (1987). The statute further provides that if the insane defendant spouse does not have sufficient income to provide for his or her own care and maintenance, the court shall require the sane spouse to provide for care and maintenance for the defendant's lifetime. *Id.*

Defendant presented three expert witnesses. Dr. Seymour Halleck, a physician licensed to practice psychiatry in North Carolina, who is a faculty member at the University of North Carolina School of Medicine, testified by affidavit. Dr. Ada Khoury, who is licensed to practice psychiatry in North Carolina and was in August 1990 a house staff officer at North Carolina Memorial Hospital and a resident at the University of North Carolina School of Medicine, testified in person. Dr. George Hamby, who is licensed to practice psychiatry in North Carolina and is engaged in private practice and has treated defendant continuously since 1968, also testified in person.

Dr. Halleck treated defendant for mental illness in 1975 and 1979 and diagnosed defendant as suffering from paranoid schizophrenia. When Dr. Halleck discharged defendant, she was instructed to continue taking Trilafon and Cogentin. The record does not indicate that Dr. Halleck saw defendant after 1979.

Dr. Khoury testified that she examined and treated defendant for mental illness in July and August 1990 and diagnosed her as suffering from schizo-affective disorder. Dr. Khoury had not seen defendant prior to July 1990 and had no independent knowledge aside from that gleaned from Dr. Hamby's records concerning defendant's ability to perform the normal functions of daily life.

Dr. Hamby testified that he had diagnosed defendant as suffering from paranoid schizophrenia, manic depression (bipolar disorder), and schizo-affective disorder, which recognizes that defendant suffers from a combination of manic depression and paranoid schizophrenia. Both Dr. Khoury and Dr. Hamby were of the opinion that defendant's use of alcohol complicated her mental illness and made it worse. Dr. Hamby testified that at the time of the hearing the three main things defendant needed to do were to keep her appointments with him, take her medication properly, and avoid drinking alcohol while taking the medication. Dr. Hamby testified that when defendant reached the point that she could handle these three tasks without assistance he would tell her to release the aids who were attending her at home. Dr. Hamby further testified that the usual reason for hospitalizing defendant was to adjust or alter her medication. Defendant has never been involuntarily committed though from time to time Dr. Hamby did tell defendant that if she would not enter the hospital voluntarily, he would have to have her committed. Defendant always agreed to the hospitalization. While Dr. Hamby expressed some concern about defendant's ability to handle large sums of money, he was not concerned about her ability to control a household account.

Plaintiff testified that the parties separated on 17 December 1988 after thirty-two years of marriage, and since the separation defendant had lived by herself in the marital home. According to plaintiff's testimony, defendant cared for the children while they were being raised; handled the finances and kept a joint checking account; maintained her driver's license and drove a car except when the doctor advised her not to drive on account of the medication level; entertained at home, frequently having people as guests

for dinner and from time to time orchestrating larger parties with fifty to a hundred people; handled maintenance on the home including contracting with and paying plumbers, painters, and yardmen; and had familiarity with the assets in her trust account and kept up with the dividends. Plaintiff further testified that the couple had always had communication problems even in good times and that defendant was given to mood changes and outbursts of anger. Defendant had been under medication for the last twenty-three years and, except for the periods of hospitalization, was able to function as a housewife and person within the family unit.

[1] In light of the evidence in the record, we conclude the Court of Appeals did not err in affirming the trial court's denial of defendant's motion to dismiss for the following reasons. First, defendant's expert testimony does not satisfy the requirements of the statute. The statute requires the evidence to show both examination of the insane spouse by two or more medical doctors who are members of the staff of one of North Carolina's accredited four-year medical schools at least three years preceding the institution of the action for divorce and a determination at that time by the staff members that the spouse is suffering from incurable insanity. The two members of the staff of the University of North Carolina School of Medicine who testified either in person or by affidavit were Dr. Khoury and Dr. Halleck. Dr. Khoury did not examine defendant until July 1990, some three months after the divorce action was commenced on 10 April 1990. Hence, only one of defendant's medical experts associated with a four-year medical school made any determination of defendant's condition three years prior to the institution of the action for divorce, and defendant has thus not met the procedural requirements set forth in N.C.G.S. § 50-5.1.

Second, the evidence supports the following finding of fact made by the trial court in ruling on defendant's motion to dismiss:

Over the last twenty-two years, the defendant has been voluntarily hospitalized for short periods of time on numerous occasions at Alamance Memorial Hospital and North Carolina Memorial Hospital for treatment of mental illness. The defendant has continually suffered from incurable mental illness but a majority of the time, her mental illness has been controllable with medication and the defendant has been able to function in normal daily situations such as maintaining a household, paying bills and handling financial matters, hosting social func-

tions, shopping, maintaining her driver's license and operating a motor vehicle. The defendant has never been involuntarily committed nor adjudicated incompetent or incurably insane.

Notwithstanding defendant's assertions that the evidence relevant to her incurable insanity is undisputed, the record discloses substantial conflicting evidence to support the trial court's finding. Admittedly, the evidence that defendant suffers from an incurable mental illness is undisputed, but the evidence that the condition is treatable and controllable with medication is also undisputed. In making its findings, the trial court was entitled to consider both expert and nonexpert testimony. Uncontradicted expert testimony is not binding on the trier of fact. Questions of credibility and the weight to be accorded the evidence remain in the province of the finder of facts. *Correll v. Allen*, 94 N.C. App. 464, 470, 380 S.E.2d 580, 584 (1989). Although plaintiff offered no expert testimony to contradict defendant's expert evidence concerning the diagnosis of defendant's condition, plaintiff's own testimony showed defendant's ability to perform usual daily tasks when her illness was controlled with medication. Moreover, the testimony of Dr. Hamby, defendant's treating psychiatrist and the person most familiar with her condition over an extended period of time, corroborated certain of plaintiff's evidence. The well-established rule is that findings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding. *In re Estate of Trogdon*, 330 N.C. 143, 147, 409 S.E.2d 897, 900 (1991). Conclusions of law are, however, entirely reviewable on appeal.

[2] Finally, the Court of Appeals did not err by applying an overly restrictive definition of incurable insanity. The statute itself does not define "incurable insanity." Interpreting N.C.G.S. § 50-5.1 (formerly N.C.G.S. § 50-5(6)), this Court has stated:

Separation occasioned by insanity is cause for divorce in North Carolina only in cases of incurable insanity. And in these cases the requirements of G.S. 50-5(6) must be met. In all other instances of separation arising by reason of mental incompetency, such separation is not a ground for divorce. But to bar an action for divorce based on two years separation, the mental impairment must be to such extent that defendant does not understand what he or she is engaged in doing, and the nature and consequences of the act.

*Moody v. Moody,* 253 N.C. 752, 756, 117 S.E.2d 724, 727 (1961) (citing *Lawson v. Bennett,* 240 N.C. 52, 81 S.E.2d 162 (1954)).

Defendant urges this Court to adopt a more expansive meaning of the term, "incurable insanity," by superimposing on N.C.G.S. § 50-5.1 the definition of severe and persistent mental illness found in the Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985 as amended in the 1990 Regular Session of the General Assembly. N.C.G.S. § 122C (1993). That statute defines severe and persistent mental illness in an adult as

> a mental disorder suffered by persons of 18 years of age or older that leads these persons to exhibit emotional or behavioral functioning that is so impaired as to interfere substantially with their capacity to remain in the community without supportive treatment or services of a long term or indefinite duration. This disorder is a severe and persistent mental disability, resulting in a long-term limitation of functional capacities for the primary activities of daily living, such as interpersonal relations, homemaking, self-care, employment, and recreation.

N.C.G.S. § 122C-3(33a) (1993). Recognizing that this definition is more specific and assuming arguendo that defendant's illness is within the scope of this definition, we decline to adopt this definition as a substitute for "incurable insanity" in N.C.G.S. § 50-5.1.

Under accepted canons of statutory construction, an interpretation

> consistently given to the statute is as much a part of the statute as if expressly written in it. We have no right to change or ignore it. If it is to be changed, it must be done by the Legislature, the law-making power. If, in its wisdom, a change is desirable, it can readily do so.

*Hyler v. GTE Products Co.,* 333 N.C. 258, 266, 425 S.E.2d 698, 703 (1993) (quoting *Hensley v. Cooperative,* 246 N.C. 274, 281, 98 S.E.2d 289, 294 (1957)). The purpose of the Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985 is different from that of the divorce statute. Furthermore, N.C.G.S. § 50-5.1 and other sections of Chapter 50 have been amended numerous times since this Court's decision in *Moody.* As recently as the 1991 session, the General Assembly enacted N.C.G.S. § 50-22 to permit a claim for equitable distribution by an incompetent spouse's guardian without a decree of divorce after the parties

SCOTT v. SCOTT

[336 N.C. 284 (1994)]

have lived separate and apart for one year. N.C.G.S. § 50-22 (1991). The statute then specifically preserves the right of the competent spouse to obtain a divorce. *Id.*

If the legislature had wished to redefine "incurable insanity" in N.C.G.S. § 50-5.1 to equate the term with severe and persistent mental illness as defined in the Mental Health, Developmental Disabilities, and Substance Abuse Act of 1985 as amended, it could have done so. Defendant's expert, Dr. Khoury, testified that approximately eight percent or twenty million people in the United States suffer from bipolar disorder or manic depression. The medical experts also testified that this mental illness is treatable and controllable by medication. Given the legislature's failure to amend N.C.G.S. § 50-5.1, we cannot presume that the legislature intended to limit one spouse's right to divorce based on one year's separation where the other spouse's condition does not rise to the level of incurable insanity as previously defined by this Court.

As stated in *Mabry v. Mabry*, 243 N.C. 126, 129, 90 S.E.2d 221, 223 (1955): "The State is interested in the marital status of its citizens, and it guards with care the marital rights as well · as the property rights of its insane." The purpose of N.C.G.S. § 50-5.1 is twofold, namely, (i) to allow a sane spouse to divorce an incurably insane spouse who is unable by reason of his or her mental condition to fulfill the obligations of a husband or wife and (ii) to provide for the support of that person. For the foregoing reasons, we hold that to bar an action for divorce based on one year's separation the "mental impairment must be to such extent that defendant does not understand what he or she is engaged in doing, and the nature and consequences of the act." *Moody*, 253 N.C. at 756, 117 S.E.2d at 727. Applying this standard, the trial court, based on its finding of fact, did not err in concluding as a matter of law that "defendant has failed to prove by the greater weight of the evidence that she is incurably insane within the meaning and purpose of North Carolina G.S. 50-5.1."

[3] The second issue raised in this appeal is whether the trial court erred in placing the burden of proof on the defendant to show incurable insanity. The defendant contends that a plaintiff seeking a divorce based on one year's separation pursuant to N.C.G.S. § 50-6 should be required to plead and prove that the defendant is sane. We disagree. All persons are presumed to be of sound mind until the contrary is shown. *Davis v. Davis*, 223 N.C. 36,

38, 25 S.E.2d 181, 183 (1943). Insanity is an affirmative defense. Accordingly, we hold that to bar an action for divorce based on one year's separation, the defendant bears the burden of persuasion that he or she is incurably insane within the meaning and purpose of N.C.G.S. § 50-5.1.

AFFIRMED.

Justice MITCHELL concurring.

I completely concur in the scholarly opinion of the Court in this case. I must point out, however, that this opinion demonstrates the error of the bare majority of this Court which implied in a prior case that legislative inaction after a judicial interpretation of a statute was a weak reed upon which to lean and that the legislature's failure to modify a statute after such a judicial interpretation was as likely to be the product of political cowardice as to be the product of the legislature's approval of this Court's interpretation. *DiDonato v. Wortman*, 320 N.C. 423, 425, 358 S.E.2d 489, 490 (1987). I believe that Justice Webb was correct when he stated in his dissent in *DiDonato* that the rule of statutory construction treating legislative silence as approval of our prior judicial construction of a statute should not be denigrated. *Id.* at 437, 358 S.E.2d at 497 (Webb, J., dissenting). As Justice Webb quite accurately stated: "It cannot add to the strength of this Court to use this canon of construction when we want to reach a certain result, *State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986), and ignore it when it suits our convenience." *DiDonato*, 320 N.C. at 437, 358 S.E.2d at 497. I am pleased to see this Court return in the present case to the undiluted application of the doctrine of statutory construction inferring legislative approval of the decisions of this Court from legislative silence in the face of those decisions. It is my sincere hope that the Court will now follow this canon of statutory construction consistently and not ignore it when it suits our purpose to do so.