IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-999

 Filed: 16 May 2017

Orange County, Nos. 15 CRS 51309, 51310

STATE OF NORTH CAROLINA, Plaintiff,

 v.

PIERRE JE BRON MOORE, Defendant.

 Appeal by defendant from judgment entered 20 April 2016 by Judge R. Allen

Baddour, Jr. in Orange County Superior Court. Heard in the Court of Appeals 21

March 2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph
 E. Herrin, for the State.

 Meghan Adelle Jones for defendant-appellant.

 ZACHARY, Judge.

 Pierre Je Bron Moore (defendant) appeals from the judgment entered upon his

convictions of fleeing to elude arrest, resisting an officer, driving without a driver’s

license, failing to heed a law enforcement officer’s blue light and siren, speeding, and

reckless driving. On appeal, defendant argues that the trial court erred by denying

his motion for a continuance, by allowing the State to introduce into evidence a copy

of a convenience store surveillance video, and by denying his motion to suppress

statements made by defendant. We conclude that the trial court did not err by

denying defendant’s motion for a continuance or his motion to suppress. We further
 STATE V. MOORE

 Opinion of the Court

conclude that the trial court erred by admitting the video, but that its admission was

not prejudicial.

 I. Factual and Procedural Background

 On 6 July 2015, the Grand Jury of Orange County returned indictments

charging defendant with the felony of fleeing to elude arrest and with the related

misdemeanors of resisting an officer, reckless driving to endanger, driving without a

license, speeding, and failing to heed a law enforcement officer’s blue light and siren.

Mr. George Doyle was initially appointed to represent defendant, but was permitted

to withdraw on 9 March 2016, at which time defendant’s trial counsel, Ms. Kellie

Mannette, was appointed to represent him. The charges against defendant came on

for trial before a jury at the 18 April 2016 criminal session of Superior Court for

Orange County, the Honorable R. Allen Baddour, Jr. presiding. Defendant did not

testify or present evidence at trial. The State’s evidence tended to show, in relevant

part, the following.

 During the early morning hours of 21 May 2015, Carrboro Police Officer David

Deshaies was on patrol and was driving on Jones Ferry Road, in Carrboro, North

Carolina. As Officer Deshaies drove past a Kangaroo gas station and convenience

store, he noticed a man getting out of the driver’s side of a silver Nissan Altima. A

month earlier, Officer Deshaies had attempted to stop a similar car for speeding, but

the car fled. At that time, Officer Deshaies had noted that the Altima had a 30 day

 -2-
 STATE V. MOORE

 Opinion of the Court

temporary tag, but the officer was unable to identify the driver and no one was

charged as a result of that incident. When Officer Deshaies saw a similar silver

Nissan Altima on 21 May 2015, he checked the license tag number on his computer

and learned that the car, which was owned by someone other than defendant, had

been issued a license plate about ten days earlier. Officer Deshaies suspected that it

was the same vehicle that he had tried to stop a month earlier.

 Officer Deshaies pulled into the Kangaroo parking lot and observed defendant

getting out of the driver’s side of the Altima. Officer Deshaies recognized defendant

from other encounters during the previous two years, and noticed that defendant was

wearing a white cloth on his head. When Officer Deshaies saw defendant and another

man enter the convenience store, he contacted other officers, and they agreed to watch

the vehicle when it left the store and to stop the car if the driver violated any traffic

laws. Officer Deshaies then drove a short distance from the store, and as a result he

did not see who was driving when the car left the store’s parking lot.

 After the Altima left the parking lot, Officer Deshaies observed that it was

exceeding the legal speed limit and contacted the law enforcement center to inform

the dispatch officer that he was going to stop the Nissan. When Officer Deshaies

activated his blue light and siren, the car accelerated rapidly away from him. Officer

Deshaies followed the car for several miles, during which time he observed it run a

red light and accelerate to speeds of over 110 miles per hour. Officer Deshaies chased

 -3-
 STATE V. MOORE

 Opinion of the Court

the car for several minutes before his supervisor directed him to discontinue the

attempt to stop the vehicle. Officer Deshaies then returned to the Kangaroo gas

station and convenience store where he had first noticed the car. Officer Deshaies

described defendant’s appearance to the store’s clerk, who told the officer that he

knew a person who fit the description, and that he would recognize the person if he

saw him again.

 On 22 May 2015, Officer Deshaies returned to the Kangaroo store and asked

the manager if he could review the store’s video surveillance footage from the night

before. Officer Deshaies was permitted to view the video footage. However, the

manager of the store told Officer Deshaies that the ownership of the Kangaroo store

was in the process of being transferred to a different company and that, as a result of

corporate policies involved in the transfer of ownership, the manager of the Kangaroo

store lacked the authority to make a copy of the video. Officer Deshaies then used

the video camera in his cell phone to copy the video, and downloaded the video from

his cell phone to a computer to make a digital copy. Officer Deshaies testified that

the video was an accurate representation of the video that he reviewed at the store.

 The trial court allowed the copy of the surveillance video to be played for the

jury, over defendant’s objection. The video depicts footage of the convenience store

premises taken by four different cameras recording views of the parking lot and the

interior of the store. The footage includes images of a man with a white cloth on his

 -4-
 STATE V. MOORE

 Opinion of the Court

head getting out of the driver’s side of a car. Officer Deshaies identified this man as

defendant. Officer Deshaies testified that he had personally observed defendant get

out of the car but that he had moved his patrol vehicle out of view of the store before

defendant and the other man got back into the car and drove away. The video also

shows defendant getting into the driver’s side of the car before it left the parking lot.

 The clerk testified that on 21 May 2015 he was employed as a clerk at the

Kangaroo gas station and convenience store on Jones Ferry Road, in Carrboro.

Defendant had been a “regular customer” at the store and at around 1:00 a.m. on 21

May 2015, defendant and another man made a brief visit to the store. The clerk

identified defendant in court and on the copy of the surveillance video.

 Carrboro Police Officer Russell Suitt testified that he and defendant had

attended high school together. Officer Suitt was not involved in the car chase on 21

May 2015, but the next day he learned that there were outstanding warrants for

defendant’s arrest. That morning, Officer Suitt saw defendant walking on Homestead

Road in Chapel Hill. Officer Suitt stopped defendant and informed him that there

were warrants for his arrest. Defendant was arrested and placed in Officer Suitt’s

patrol vehicle without incident. As Officer Suitt was transporting defendant to the

law enforcement center, another officer spoke to Officer Suitt over the police radio in

the car, and asked Officer Suitt if he had information about the location of the vehicle

that was involved in the incident the night before. Defendant spoke up from the back

 -5-
 STATE V. MOORE

 Opinion of the Court

seat of the patrol vehicle and said that the car was in a secret location. Defendant

also told Officer Suitt that he had sped away from the law enforcement officers the

night before because he feared being charged with impaired driving.

 On 20 April 2016, the jury returned verdicts finding defendant guilty of the

charged offenses. The trial court arrested judgment on the charges of speeding and

reckless driving, and consolidated the remaining charges for sentencing. The court

sentenced defendant to a term of eight to nineteen months’ imprisonment, to be

served at the expiration of another sentence that defendant was then serving for an

unrelated charge. Defendant noted a timely appeal to this Court.

 II. Denial of Motion for Continuance

 A. Legal Principles

 On appeal, defendant argues that the denial of his motion to continue the trial

of this case deprived him of his constitutional right to the effective assistance of

counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United

States Constitution and Article I, Section 23 of the North Carolina Constitution. The

standard of review of a trial court’s ruling on a continuance motion is well-

established:

 It is, of course, axiomatic that a motion for a continuance
 is ordinarily addressed to the sound discretion of the trial
 judge whose ruling thereon is not subject to review absent
 a gross abuse. It is equally well established, however, that,
 when such a motion raises a constitutional issue, the trial
 court’s action upon it involves a question of law which is

 -6-
 STATE V. MOORE

 Opinion of the Court

 fully reviewable by an examination of the particular
 circumstances of each case. Denial of a motion for a
 continuance, regardless of its nature, is, nevertheless,
 grounds for a new trial only upon a showing by defendant
 that the denial was erroneous and that [his] case was
 prejudiced thereby.

State v. Searles, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981) (citations omitted).

 N.C. Gen. Stat. § 15A-952(g) (2015) addresses a trial court’s determination of

whether to allow a continuance and provides in relevant part that “the judge shall

consider at least the following factors in determining whether to grant a

continuance:”

 (1) Whether the failure to grant a continuance would be
 likely to result in a miscarriage of justice; [and]

 (2) Whether the case taken as a whole is so unusual and so
 complex, due to the number of defendants or the nature of
 the prosecution or otherwise, that more time is needed for
 adequate preparation[.]

 The refusal to grant a continuance may, in certain factual circumstances,

violate a defendant’s constitutional rights. “The defendant’s rights to the assistance

of counsel and to confront witnesses are guaranteed by the Sixth and Fourteenth

Amendments to the Constitution of the United States and by sections 19 and 23 of

Article I of the Constitution of North Carolina. Implicit in these constitutional

provisions is the requirement that an accused have a reasonable time to investigate,

prepare and present his defense.” State v. Tunstall, 334 N.C. 320, 328, 432 S.E.2d

331, 336 (1993) (internal quotation omitted).

 -7-
 STATE V. MOORE

 Opinion of the Court

 “[T]he constitutional guarantees of assistance of counsel and confrontation of

witnesses include the right of a defendant to have a reasonable time to investigate

and prepare his case, but no precise limits are fixed in this context, and what

constitutes a reasonable length of time for defense preparation must be determined

upon the facts of each case.” Searles, 304 N.C. at 153-54, 282 S.E.2d at 433 (citation

omitted). The Supreme Court of North Carolina has explained:

 To establish that the trial court’s failure to give additional
 time to prepare constituted a constitutional violation,
 defendant must show “how his case would have been better
 prepared had the continuance been granted or that he was
 materially prejudiced by the denial of his motion.” “[A]
 motion for a continuance should be supported by an
 affidavit showing sufficient grounds for the continuance.”
 “[A] postponement is proper if there is a belief that
 material evidence will come to light and such belief is
 reasonably grounded on known facts.” . . . Continuances
 should not be granted unless the reasons therefor are fully
 established.

State v. McCullers, 341 N.C. 19, 31-32, 460 S.E.2d 163, 170 (1995) (quoting State v.

Covington, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986), State v. Kuplen, 316 N.C.

387, 403, 343 S.E.2d 793, 802 (1986), and State v. Tolley, 290 N.C. 349, 357, 226

S.E.2d 353, 362 (1976)) (emphasis in original).

 B. Discussion

 Following defendant’s arrest on 22 May 2015, Mr. George Doyle was appointed

to represent defendant on the charges that are the subject of this appeal. Defendant

was later charged with first-degree murder in an unrelated case, and Ms. Kellie

 -8-
 STATE V. MOORE

 Opinion of the Court

Mannette was appointed to represent him on that charge. On 9 March 2016,

defendant appeared in superior court before the Honorable James E. Hardin, Jr.,

judge presiding, who continued the homicide case until September 2016. Mr. Doyle

was present at the hearing and moved that the trial court allow him to withdraw as

defendant’s counsel on the charges in the present case and appoint Ms. Mannette as

counsel on these charges, in addition to the homicide charge on which she already

represented defendant. The prosecutor informed the court that the instant charges

were scheduled for trial on 18 April 2016, and the parties engaged in the following

discussion regarding Ms. Mannette’s representation of defendant:

 MR. DOYLE: . . . I would move to withdraw and ask that
 you appoint Ms. Mannette to those files, as appropriate.

 MS. MANNETTE: . . . Your Honor, . . . just for the record,
 I’ve been speaking to Mr. Doyle about the posture of these
 cases. And my understanding is that they were heading
 towards a resolution on those cases. I will let the Court
 know that, if they are not able to come to a non-trial
 resolution, I certainly will not be prepared in a month to
 try those cases. I do want that on the record. I don’t know
 that that’s going to be an issue here, but I did want to put
 that on the record. I’ll leave it in Your Honor’s discretion,
 whether or not to grant this motion or we can continue to
 work together but on the separate cases.

 ...

 THE COURT: -- [to the prosecutor] [D]o you want to be
 heard?

 PROSECUTOR: My concern is -- I mean, and it’s really -- I
 don’t know how much standing the State has in regards to

 -9-
 STATE V. MOORE

 Opinion of the Court

 this -- is that they are set for trial. If they were in an
 administrative posture, I would -- I wouldn’t voice any
 concern, essentially. But given that they’re in trial posture,
 I don’t know if we come April 18th and the State’s ready to
 proceed and Ms. Mannette’s not, now --

 THE COURT: It’s going to get continued. That’s the bottom
 line.

 PROSECUTOR: Right, right. So once again, I’ll leave it in
 Your Honor’s discretion. . . .

 When the case was called for trial on 18 April 2016, defense counsel orally

moved for a continuance; however, the record does not contain a written motion or an

affidavit supporting defendant’s request for a continuance. Defendant’s counsel told

the trial court that she had agreed to represent defendant “with the understanding”

that if the parties could not reach a non-trial disposition, she “would not be prepared

to try the case[.]” Defense counsel explained that she had hoped to resolve the charges

without a trial, but had learned that morning that defendant would not accept the

State’s plea offer. Defense counsel acknowledged that she had received discovery a

month earlier, on the day she was appointed. Counsel stated that she had not

interviewed a witness or conducted the legal research necessary to support her

pretrial motions. The trial court denied the motion for continuance.

 As discussed above, in order to establish that the denial of a continuance

motion was an error of constitutional magnitude, a defendant must show both that

the trial court erred by denying his motion and also that this error resulted in

 - 10 -
 STATE V. MOORE

 Opinion of the Court

prejudice to the defendant. On appeal, defendant argues that the trial court’s denial

of his continuance motion violated his rights under the United States and North

Carolina Constitutions to the effective assistance of counsel and to adequate time

within which to prepare a defense. We have carefully considered defendant’s

arguments and conclude that they lack merit.

 Defendant first contends that the trial court erred by denying his continuance

motion on the grounds that a comment made by Judge Hardin during the 9 March

2016 hearing constituted a “ruling” on defendant’s right to a continuance, which the

trial court lacked the authority to overrule. Defendant’s argument is based on the

following excerpt from the 9 March 2016 hearing:

 PROSECUTOR: . . . [G]iven that they’re in trial posture, I
 don’t know if we come April 18th and the State’s ready to
 proceed and Ms. Mannette’s not, now --

 THE COURT: It’s going to get continued. That’s the bottom
 line.

 “It is well established that one superior court judge may not ordinarily modify,

overrule, or change the judgment or order of another superior court judge previously

entered in the same case.” In re Royster, 361 N.C. 560, 563, 648 S.E.2d 837, 840

(2007) (citation omitted). In this case, the trial court’s remark was clearly not a

“judgment or order.” However, on appeal, defendant characterizes this statement as

a “ruling” that could not be overruled by another superior court judge. “Unfortunately

for [defendant, he] failed to obtain a written ruling[.] . . . [A]n order rendered in open

 - 11 -
 STATE V. MOORE

 Opinion of the Court

court is not enforceable until it is entered, i.e., until it is reduced to writing, signed

by the judge, and filed with the clerk of court.” In re Goddard & Peterson, PLLC, __

N.C. App. __, 789 S.E.2d 835, 840 (2016) (internal quotation omitted). Defendant cites

no authority holding that an oral statement by the judge, which is not reduced to

writing or entered as an order or judgment, constitutes a “judgment or order” that

may not be overruled by another judge. We conclude that this argument lacks merit.

 Defendant also contends that he established before the trial court his need for

additional time to prepare a defense. At the pretrial hearing, defense counsel stated

that there was a “lay witness” whom she had not interviewed, a suppression motion

for which she had not conducted the necessary research, and other unspecified

“motions in limine that need to be filed and argued.” Defense counsel did not identify

the witness or articulate any material factual issue upon which this witness might

testify.

 Nor did defendant’s counsel proffer an explanation, other than her reliance

upon Judge Hardin’s comment at the earlier hearing, for her failure to interview the

witness, to conduct the necessary research, or to file a properly supported written

motion for continuance. For example, defense counsel did not state that she had

experienced a personal emergency, was involved in a jury trial, or had been required

to travel during the month between her appointment and the trial of these charges.

 - 12 -
 STATE V. MOORE

 Opinion of the Court

 In addition, as discussed above, N.C. Gen. Stat. § 15A-952(g)(2) directs a trial

court to consider, in ruling on a motion for continuance, “[w]hether the case taken as

a whole is so unusual and so complex . . . that more time is needed for adequate

preparation[.]” In this case, defendant did not argue at the pretrial hearing that the

trial of these charges was unusual or complex. The charges lodged against defendant

all arose from a single incident of high speed driving and the only factual issue that

was seriously contested at trial was the identity of the driver. We conclude that

defendant failed to establish at the pretrial hearing that the denial of his continuance

motion would violate his right to due process or to the effective assistance of counsel.

 Moreover, even assuming, arguendo, that it was error to deny defendant’s

motion to continue, defendant has failed to show prejudice on appeal. In his appellate

brief, defendant does not identify specific factual issues that might have been resolved

differently if his counsel had conducted further investigation or interviewed

witnesses. Defendant argues that his counsel was ineffective at trial, based upon

counsel’s failure to conduct legal research prior to trial in support of his suppression

motion. The premise of this contention is that, had defendant provided the trial court

with case law to support his position, the court would then have granted his

suppression motion. This argument has two flaws. First, “[w]e are cognizant of the

rule that in a bench trial, the trial judge will be presumed to know the law and will

disregard irrelevant or inadmissible evidence.” Scott v. Scott, 106 N.C. App. 606, 613,

 - 13 -
 STATE V. MOORE

 Opinion of the Court

417 S.E.2d 818, 823 (1992), aff’d 336 N.C. 284, 442 S.E.2d 493 (1994). We presume

that the trial court was acquainted with the relevant jurisprudence governing the

issues raised by defendant’s suppression motion. Secondly, on appeal defendant has

not identified any specific cases or legal theories that, if they had been proffered to

the trial court, might have altered the court’s ruling on his suppression motion.

Defendant also asserts that prejudice should be presumed, on the grounds that there

was only a remote likelihood that even an experienced trial lawyer could prepare to

try these charges in a month. However, defendant fails to identify any unusual

complexities that might support this contention. We conclude that defendant has

failed to show that the trial court violated defendant’s constitutional rights in its

denial of defendant’s continuance motion.

 III. Admission of Video

 N.C. Gen. Stat. § 8-97 (2015) provides that:

 Any party may introduce a photograph, video tape, motion
 picture, X-ray or other photographic representation as
 substantive evidence upon laying a proper foundation and
 meeting other applicable evidentiary requirements. This
 section does not prohibit a party from introducing a
 photograph or other pictorial representation solely for the
 purpose of illustrating the testimony of a witness.

 N.C. Gen. Stat. § 8-97 provides that a photograph may be introduced for either

illustrative or substantive purposes. “Rule 901 of our Rules of Evidence requires

authentication or identification ‘by evidence sufficient to support a finding that the

 - 14 -
 STATE V. MOORE

 Opinion of the Court

matter in question is what its proponent claims.’ ” State v. Murray, 229 N.C. App.

285, 288, 746 S.E.2d 452, 455 (2013) (citing N.C. Gen. Stat. § 8C-1, Rule 901).

 “Video images may be introduced into evidence for illustrative purposes after

a proper foundation is laid. N.C. Gen. Stat. § 8-97 (2015). The proponent for admission

of a video lays this foundation with ‘testimony that the motion picture or videotape

fairly and accurately illustrates the events filmed (illustrative purposes).’ ” State v.

Fleming, __ N.C. App. __, __, 786 S.E.2d 760, 764-65 (2016) (quoting State v. Cannon,

92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988), rev’d on other grounds, 326

N.C. 37, 387 S.E.2d 450 (1990)).

 In State v. Snead, 368 N.C. 811, 783 S.E.2d 733 (2016), our Supreme Court

addressed the requirements for introduction of a video as substantive evidence:

 Rule 901(a) requires that evidence be authenticated by
 showing “that the matter in question is what its proponent
 claims.” N.C.G.S. § 8C-1, Rule 901(a) (2015). . . . .
 Recordings such as a tape from an automatic surveillance
 camera can be authenticated as the accurate product of an
 automated process under Rule 901(b)(9). . . . Evidence that
 the recording process is reliable and that the video
 introduced at trial is the same video that was produced by
 the recording process is sufficient to authenticate the video
 and lay a proper foundation for its admission as
 substantive evidence.

Snead, 368 N.C. at 814, 783 S.E.2d at 736 (internal quotation omitted). Snead held

that the testimony offered at trial was sufficient to authenticate the video:

 . . . [The witness’s] testimony was sufficient to authenticate
 the video under Rule 901. [The witness] established that

 - 15 -
 STATE V. MOORE

 Opinion of the Court

 the recording process was reliable by testifying that he was
 familiar with how Belk’s video surveillance system worked,
 that the recording equipment was “industry standard,”
 that the equipment was “in working order” on 1 February
 2013, and that the videos produced by the surveillance
 system contain safeguards to prevent tampering.
 Moreover, [the witness] established that the video
 introduced at trial was the same video produced by the
 recording process by stating that the State’s exhibit at trial
 contained exactly the same video that he saw on the digital
 video recorder. . . . [The witness’s] testimony, therefore,
 satisfied Rule 901, and the trial court did not err in
 admitting the video into evidence.

Snead at 815-16, 783 S.E.2d at 737.

 In the present case, the evidence concerning the admissibility of the video

consisted of the following. Officer Deshaies testified that the day after the incident

giving rise to these charges, he asked the manager of the Kangaroo convenience store

for a copy of the surveillance video made by cameras at the store. The manager

allowed Officer Deshaies to review the video, but was unable to copy it. Officer

Deshaies used the video camera function on his cell phone to make a copy of the

surveillance footage. At trial he testified that the cell phone video accurately showed

the contents of the video that he had seen at the store. The store clerk also reviewed

the video, but was not asked any questions about the creation of the original video or

whether it accurately depicted the events that he observed on 21 May 2015.

 A careful review of the transcript in this case reveals that no testimony was

elicited at trial concerning the type of recording equipment used to make the video,

 - 16 -
 STATE V. MOORE

 Opinion of the Court

its condition on 21 May 2015, or its general reliability. No witness was asked whether

the video accurately depicted events that he had observed, and no testimony was

offered on the subject. We conclude that the State failed to offer a proper foundation

for introduction of the video as either illustrative or substantive evidence.

 On appeal, the State contends that the clerk “testified that the events

contained on the video copy made by Officer Deshaies were an accurate portrayal of

what he had seen on the original videotape and had witnessed within the store.” This

assertion is inaccurate. The clerk testified that defendant was shown on the video,

but was not asked whether the video accurately depicted events he observed on 21

May 2015, and did not volunteer testimony of this nature. We hold that the trial

court erred by admitting the video into evidence.

 We next consider whether the introduction of the video was prejudicial.

Defendant did not object to the admission of the video on constitutional grounds.

Regarding prejudice from errors that do not arise under the state or federal

constitution, N.C. Gen. Stat. § 15A-1443(a) states that:

 A defendant is prejudiced by errors relating to rights
 arising other than under the Constitution of the United
 States when there is a reasonable possibility that, had the
 error in question not been committed, a different result
 would have been reached at the trial out of which the
 appeal arises. The burden of showing such prejudice under
 this subsection is upon the defendant.

 - 17 -
 STATE V. MOORE

 Opinion of the Court

 In this case, the primary issue for the jury to resolve was whether the State

had shown beyond a reasonable doubt that defendant was the driver of the car that

sped away from Officer Deshaies on 21 May 2015. In its appellate brief, the State

argues that the video was admissible and does not address the issue of prejudice.

Defendant argues that, absent the admission of the video there is a reasonable

possibility that the jury would not have convicted him. We have considered the

admission of the video in the context of the other evidence against defendant, and

conclude that it was not prejudicial.

 We summarize the trial evidence pertaining to defendant’s identity as the

driver as follows: Officer Deshaies testified that he saw defendant getting out of the

car on the driver’s side. The jury might reasonably infer that the person who drove

the car into the store’s parking lot would also drive when the two men left the store.

In addition, as discussed in detail below, the State offered evidence that at the time

of his arrest defendant told the arresting officer “that the only reason he ran from

officers the night of 5/21/2015 was because he had been drinking and did not want to

deal with the driving while impaired charges.” This statement was a direct admission

of the fact that he was driving the car the night before, given that a passenger in the

car would not be charged with impaired driving. On the other hand, defendant directs

our attention to the facts that defendant did not own the car, and that the jury asked

to review the video during its deliberations.

 - 18 -
 STATE V. MOORE

 Opinion of the Court

 We have evaluated the degree to which the admission of the video may have

played a role in the jury’s decision to convict defendant, particularly given that

defendant essentially confessed to being the driver of the car, and conclude that there

is no reasonable possibility that the jury would have failed to convict defendant

absent the video evidence.

 IV. Denial of Suppression Motion

 Prior to trial, defendant moved to suppress the statements that he made to

Officer Suitts while the officer was transporting him to the law enforcement center.

The trial court conducted a hearing on defendant’s suppression motion on the day

that the trial began and denied defendant’s motion. On appeal, defendant argues

that his statements were made in response to police interrogation or its functional

equivalent, in violation of his right under the Fifth Amendment to the United States

Constitution to avoid self-incrimination. We disagree.

 In Miranda v. Arizona, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 707 (1966), the

United States Supreme Court held that:

 [T]he prosecution may not use statements, whether
 exculpatory or inculpatory, stemming from custodial
 interrogation of the defendant unless it demonstrates the
 use of procedural safeguards effective to secure the
 privilege against self-incrimination. . . . Prior to any
 questioning, the person must be warned that he has a right
 to remain silent, that any statement he does make may be
 used as evidence against him, and that he has a right to
 the presence of an attorney, either retained or appointed.

 - 19 -
 STATE V. MOORE

 Opinion of the Court

 “The rule of Miranda requiring that suspects be informed of their

constitutional rights before being questioned by the police only applies to custodial

interrogation.” State v. Brooks, 337 N.C. 132, 143, 446 S.E.2d 579, 586 (1994).

Miranda also held, as relevant to the present case, that “[a]ny statement given freely

and voluntarily without any compelling influences is, of course, admissible in

evidence.” Miranda, 384 U.S. at 478, 16 L. Ed. 2d at 726.

 In the present case, there is no dispute that when defendant made inculpatory

statements to Officer Suitt he was in custody and had not been apprised of his

Miranda rights. Thus, the dispositive issue is whether defendant was subjected to

interrogation. “The Supreme Court has defined the term ‘interrogation’ as follows:

‘Any words or actions on the part of the police . . . that the police should know are

reasonably likely to elicit an incriminating response from the suspect.’ ” State v.

Brewington, 352 N.C. 489, 503, 532 S.E.2d 496, 504 (2000) (quoting Rhode Island v.

Innis, 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308 (1980)).

 Defendant made inculpatory statements after being arrested and while being

transported to the law enforcement center. These statements were made in response

to questions from Officer Suitt’s supervising officer over the police radio. At the

hearing on defendant’s suppression motion, Officer Suitt testified as follows:

 PROSECUTOR: Okay. And what happened next [after
 defendant was secured in the patrol vehicle]?

 - 20 -
 STATE V. MOORE

 Opinion of the Court

OFFICER SUITT: . . . [W]e were en route to the police
department and Mr. Moore heard -- my lieutenant was
asking about the vehicle, maybe see if we could locate the
vehicle. He asked if Mr. Moore had said anything about
where the vehicle was located. Well, obviously the speaker
in my patrol car, anybody can hear that’s inside the car.
Mr. Moore stated that we wouldn’t find the vehicle, it was
possibly in a secret spot, as stated in -- in the report.

PROSECUTOR: Okay. And to be clear, was that in
response to any question that was being asked of him?

OFFICER SUITTS: It was not. I did not ask him any
questions. I believe it would be in response to my
supervisor, lieutenant, asking the question over the radio
to me “Did he say anything about where the car was
located?” And his response was in response to that.

PROSECUTOR: Okay. What happened next?

OFFICER SUITTS: Still en route to the police department,
Mr. Moore stated, as I put in the report, that the only
reason that he ran from officers the night prior was because
he didn’t want to get the impaired driving charge, the DWI.

PROSECUTOR: Okay. Do you remember with any
specificity what he said? You can use your report, if
necessary.

OFFICER SUITTS: Yeah, just -- I’ll read it straight from -
- from the report. . . . “Mr. Moore went on to advise me he
ran from . . . officers on 5/21/15 [] because he had been
drinking and did not want to deal with the driving while
impaired charge.”

PROSECUTOR: Okay. And was that statement made in
response to any questions that you posed to him?

OFFICER SUITTS: No, I did not ask any questions. And
the reason I did not ask him any questions, I had not

 - 21 -
 STATE V. MOORE

 Opinion of the Court

 Mirandized him any -- in any way because I had no
 intentions on asking any questions.

 Based upon this testimony, the trial court found that defendant’s statements

were “spontaneous utterances” that were “not made in response to questions posed to

him by law enforcement” and that “defendant’s statement in response to a radio

communication by a law enforcement officer to Suitt cannot be interpreted to be an

interrogation or questioning of defendant.” (emphasis in original). The court

concluded that “[d]efendant’s statements were not coerced, and were not obtained in

violation of his constitutional rights.”

 The thrust of defendant’s appellate argument is that Officer Suitt should have

known that the conversation between Officer Suitt and another officer would be

reasonably likely to elicit an incriminating response. Defendant asserts that

defendant had a reasonable “perception that he was expected to participate in the

conversation” initiated over the police radio by Officer Suitt’s superior officer.

Defendant also notes that before Officer Suitt turned off the video recording in the

patrol car, he asked defendant where he had been walking. There is no indication in

the record that defendant answered this question. Moreover, defendant’s inculpatory

statements did not pertain to his walk on the morning of his arrest.

 Defendant has not directed our attention to appellate jurisprudence in which

the court held that a brief exchange between two law enforcement officers was the

functional equivalent of interrogation, and we note that in the leading case on this

 - 22 -
 STATE V. MOORE

 Opinion of the Court

issue, Rhode Island v. Innis, 446 U.S. 291, 64 L. Ed. 2d 297 (1980), the Supreme Court

rejected a similar argument. In Innis, the defendant was arrested for a homicide.

During the drive to the law enforcement center, the officers who had arrested

defendant discussed the fact that the firearm used in the murder had not been

located, and expressed concern about the possibility that a handicapped child might

find the weapon and harm himself. Defendant interrupted the officers’ conversation

and offered to show them where the gun was located. On appeal, the defendant

argued that the officers’ discussion was the equivalent of an interrogation. The

Supreme Court first enunciated the standard for determining when a defendant is

subjected to interrogation:

 We conclude that the Miranda safeguards come into play
 whenever a person in custody is subjected to either express
 questioning or its functional equivalent. That is to say, the
 term ‘interrogation’ under Miranda refers not only to
 express questioning, but also to any words or actions on the
 part of the police . . . that the police should know are
 reasonably likely to elicit an incriminating response from
 the suspect. . . . . But, since the police surely cannot be held
 accountable for the unforeseeable results of their words or
 actions, the definition of interrogation can extend only to
 words or actions on the part of police officers that they
 should have known were reasonably likely to elicit an
 incriminating response.

Innis, 446 U.S. at 301, 64 L. Ed. 2d at 307-08. The Court then applied this standard

to the facts of Innis, and held that the conversation conducted by the officers in the

defendant’s presence did not constitute the equivalent of an interrogation:

 - 23 -
 STATE V. MOORE

 Opinion of the Court

 [W]e conclude that the respondent was not “interrogated”
 within the meaning of Miranda. . . . [T]he conversation
 between [the officers] included no express questioning of
 the respondent. Rather, that conversation was, at least in
 form, nothing more than a dialogue between the two
 officers to which no response from the respondent was
 invited. Moreover, it cannot be fairly concluded that the
 respondent was subjected to the “functional equivalent” of
 questioning. It cannot be said, in short, that [the officers]
 should have known that their conversation was reasonably
 likely to elicit an incriminating response from the
 respondent.

Innis at 302, 64 L. Ed. 2d at 309. We find Innis functionally indistinguishable from

the present case. Indeed, the officers’ conversation in Innis was more likely to elicit

a response from the defendant, given the emotional tone of the officers’ concern for

the safety of a child, than would the question asked over the police radio in the

presence of this defendant in the present case.

 We have also considered the holding of our Supreme Court in State v. DeCastro,

342 N.C. 667, 467 S.E.2d 653 (1996). In DeCastro, the defendant was arrested on

charges of robbery and murder and was taken to the law enforcement center, where

an officer took possession of defendant’s clothing and personal effects. This officer

asked another law enforcement officer who was present whether defendant could

retain custody of money that was in his possession. Defendant overheard and

volunteered that he “had some of my own money, too” a statement that supported the

charge of robbery. DeCastro, 342 N.C. at 678, 467 S.E.2d at 658. On appeal,

defendant argued that “the detective’s question, made in defendant’s presence while

 - 24 -
 STATE V. MOORE

 Opinion of the Court

he was in police custody, could have been perceived by defendant as seeking a

response” and was therefore “the functional equivalent of police interrogation in

violation of his constitutional rights.” DeCastro at 683, 447 S.E.2d at 661. Our

Supreme Court rejected this argument, holding that defendant’s statement “was not

the result of interrogation in derogation of defendant’s right to have an attorney

present during questioning. The question by Detective Berube regarding whether

defendant could keep the money from his pocket was not directed to defendant, but

to Agent McDougall.” DeCastro at 684, 447 S.E.2d at 661.

 We conclude that defendant has failed to show that he was subjected to the

functional equivalent of an interrogation, and that the trial court did not err by

denying his motion to suppress.

 V. Conclusion

 For the reasons discussed above, we conclude that the trial court did not err by

denying defendant’s motion to continue or his motion to suppress the statements he

made to Officer Suitt, but that the trial court erred by admitting into evidence the

cell phone copy of a surveillance video from the convenience store. We hold, however,

that given the strength of the other evidence offered by the State, this error was not

prejudicial to defendant.

 NO ERROR IN PART, NO PREJUDICIAL ERROR IN PART.

 Judges BRYANT and INMAN concur.

 - 25 -